[No. D013577. Fourth Dist., Div. One. Jan. 12, 1994.]

MARILYN CHESTER et al., Plaintiffs and Appellants, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

## COUNSEL

Sutherland, Gerber & Larsen, Neil Gerber, Mazursky, Schwartz & Angelo, Charles J. Mazursky, Magana, Cathcart, McCarthy & Pierry, William H. Wimsatt, Watkins & Stevens and Steven B. Stevens for Plaintiffs and Appellants.

Daniel E. Lungren, Attorney General, Robert L. Mukai, Chief Assistant Attorney General, Marvin Goldsmith, Assistant Attorney General, and Luis Vargas, Deputy Attorney General, for Defendants and Respondents.

## OPINION

NARES, J.—Los Angeles County Deputy Sheriff Roy Chester was killed in a helicopter crash while engaged in a drug interdiction operation in Imperial County. The helicopter was flown by Geoffrey Nett, an officer of the California National Guard, which provided air support to the state and federal law enforcement agencies engaged in the drug interdiction effort.

 Chester's family[1] brought a wrongful death action against the State of California and others alleging inter alia Nett's negligence was the proximate cause of Chester's death. California successfully moved for summary judgment on the ground it was immune from suit, pursuant to Government Code section 815.2[2] and Military and Veterans Code section 392.[3] The Chesters appeal. We affirm the judgment.

### DISCUSSION

### I

Because the immunity issue presented here involves solely a question of law based upon an analysis of several statutes, we do not set forth the facts pertaining to the defendants' alleged negligence. For purposes of this opinion, we assume Nett was acting within the scope of his employment with the State of California.[4]

 Generally, a tort action may not be maintained against a public entity unless the claim is based on a statute providing for liability. (See § 815;[5] see *Lundeen Coatings Corp.* v. *Department of Water & Power* (1991) 232 Cal.App.3d 816, 832 [283 Cal.Rptr. 551]; *Cochran* v. *Herzog Engraving*

---

[1]The plaintiffs included Chester's wife, Marilyn Chester, and his children, Wendi Lynn Chester, Michael Scott Chester and Christopher Allan Chester (collectively, Chesters).

[2]All further statutory references are to the Government Code unless otherwise specified.

[3]The wrongful death actions of the families of the other passengers killed in the accident (Richard G. Romero and Michael D. Davis) were consolidated with the Chesters' case. Although California also prevailed in its summary judgment motion against the Romero and Davis families, those plaintiffs have dismissed their appeals.

[4]Generally, National Guard personnel who have not been called to active federal duty are considered employees of the state in which they serve. (See *U.S.* v. *State of Hawaii* (9th Cir. 1987) 832 F.2d 1116, 1118-1119.) California moved for summary judgment on the alternative ground that Nett was acting under federal orders and therefore was not a state employee. The court found there was a factual issue with respect to Nett's employment status. Because we decide the court correctly granted summary judgment on the basis of the immunity statutes, we need not address the issue whether California proffered sufficient evidence to establish that as a matter of law Nett was not acting as a state employee at the time of the crash.

[5]Section 815, enacted in 1963 as part of a comprehensive revision of governmental tort law, provides: "Except as otherwise provided by statute . . . [a] public entity is *not liable* for an

*Co.* (1984) 155 Cal.App.3d 405, 409 [205 Cal.Rptr. 1] ["governmental liability is limited to exceptions specifically set forth by statute"].) Section 815.2 is one such statute. Section 815.2, subdivision (a) provides: "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment *if the act or omission would, apart from this section, have given rise to a cause of action against that employee.*" (Italics added.) Section 815.2, subdivision (b) underscores that: "Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." (See *Jenkins* v. *County of Orange* (1989) 212 Cal.App.3d 278, 284 [260 Cal.Rptr. 645].)

Military and Veterans Code section 392, enacted in 1935, provides: "Members of the militia in the active service of the State shall not be liable for any act or acts done by them in the performance of their duty." It is undisputed that members of the California National Guard are "members of the militia" within the meaning of this statute. Thus, as conceded by the Chesters, this statute plainly immunizes individual guards acting within the scope of their duties for their wrongful acts and omissions.

Thus, reading sections 815 and 815.2 together with Military and Veterans Code section 392, California is immune from suit based on Nett's alleged negligence unless another statute expressly provides otherwise. In support of their argument in favor of liability, the Chesters rely on section 816 which states: "A public entity is not liable for injury arising out of any activity conducted by a member of the California National Guard pursuant to [several enumerated federal statutes] and compensated pursuant to the Federal Tort Claims Act. [¶] It is the intent of the Legislature, in enacting this section, to conform state law regarding liability for activities of the National Guard to federal law as expressed in Public Law 97-124."

The Chesters contend section 816 *creates* public entity liability for any tort committed by a member of the National Guard where, as here, the victims are not compensated by the federal government pursuant to the Federal Tort Claims Act (FTCA).[6] (28 U.S.C. § 2671 et seq.)

---

injury, whether such injury arises from an act or omission of the public entity or a public employee or any other person." (Italics added; see 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 129, pp. 209-210.)

[6]The Chesters brought a parallel FTCA action against the federal government. Based on the record before us, that litigation is unresolved and remains pending in federal court.

The FTCA provides in pertinent part: "The United States shall be liable [for tort claims] in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." (28 U.S.C. § 2674.)

## II

The fundamental goal of statutory interpretation is to " 'ascertain the intent of the lawmakers so as to effectuate the purpose of the law.' [Citations.]" (*Whitman* v. *Superior Court* (1991) 54 Cal.3d 1063, 1072 [2 Cal.Rptr.2d 160, 820 P.2d 262], quoting *People* v. *Pieters* (1991) 52 Cal.3d 894, 498-499 [276 Cal.Rptr. 918, 802 P.2d 420].) In so doing, a court must look first to the plain words of the statute. (*Burden* v. *Snowden* (1992) 2 Cal.4th 556, 562 [7 Cal.Rptr.2d 531, 828 P.2d 672].) If questions remain, the court should examine the legislative history to determine the purpose underlying the statute.

The Legislature expressly stated its purpose in enacting section 816 was to conform state law to federal law (Pub.L. No. 97-124 (Dec. 29, 1981) § 1, 95 Stat. 1666) with respect to governmental tort liability for acts of National Guard personnel. (§ 816.) Before 1981, members of the National Guard who had not been called up to active federal duty were not considered federal employees for purposes of the FTCA and therefore were not covered by the federal legislation. (See 28 U.S.C. §§ 2671, 2674; *U.S.* v. *State of Hawaii*, *supra*, 832 F.2d at p. 1118.) Public Law 97-124 amended the FTCA to specifically render the federal government liable for acts of the National Guard occurring during non-active-duty service. (28 U.S.C. § 2671.)[7] Congress, however, did not intend to make the FTCA the exclusive remedy in actions against National Guard personnel except for medical malpractice actions. (*U.S.* v. *State of Hawaii*, *supra*, 832 F.2d at p. 1119.) Thus, absent state immunity, a state could be held *jointly* liable with the federal government for actions by non-active-duty National Guard personnel. (*Ibid.*) Reacting to this situation, the California Legislature in 1982 enacted section 816 to ensure the state would not be held "liable for the torts of members of the National Guard . . . under circumstances where federal liability applies and federal compensation is made." (Legis. Counsel's Dig., Sen. Bill No. 1705, 6 Stats. 1982 (Reg. Sess.) Summary Dig., p. 202.)

## III

Before the Legislature enacted section 816, the state was immune from suit for torts of National Guard personnel such as were alleged in this case. (See § 815, subd. (b); Mil. & Vet. Code, § 392.) By declaring California "is *not* liable" for National Guard activities under particular circumstances, the Legislature plainly intended to further *restrict* governmental liability. Based

---

[7]28 United States Code section 2671 provides in relevant part: " 'Employee of the government' includes . . . members of the National Guard while engaged in training or duty under section 315, 502, 503, 504, or 505 of title 32."

on this statutory language, we cannot accept the Chesters' position that the Legislature enacted section 816 to *expand* public entity liability and to *create* a new exception to the immunity set forth in section 815.2.

The Legislature could easily have articulated its intent to affirmatively broaden liability to cover the situation here. It could have said, for example, a public entity *is liable* for the negligence of National Guard personnel if the victims of such negligence are not compensated through a federal remedy. As the Chesters point out, this would have ensured greater compensation for victims while encouraging National Guard recruitment by protecting the immunity of the individual members. However, the Legislature did not say this; nor is there any evidence in section 816's legislative history it intended to say this.[8] Rather, the Legislature made clear its sole intent was to preclude an *existing* state remedy where a federal remedy was already available.

In so concluding, we reject the Chesters' contention our interpretation means the Legislature enacted a "superfluous law" since the state was already immune from suit under Military and Veterans Code section 392. As the Chesters concede, when the California Legislature enacted section 816 other code sections rendered the state liable for acts of National Guard personnel in particular situations. For example, a published 1943 Attorney General Opinion concluded the state was liable for damages arising from a National Guard's negligent operation of a motor vehicle because Vehicle Code section 17001 specifically provides for such public entity liability. (1 Ops.Cal.Atty.Gen. 515 (1943) [interpreting Veh. Code, former. § 400 which is substantially similar to current Veh. Code, § 17001].)[9] The Legislature is presumed to act with knowledge of existing law, including the opinions of

---

[8]In analyzing this issue, we examined the various legislative materials leading to the enactment of the statute, including reports by the Senate and Assembly Committees on Governmental Organizations, the Senate Democratic and Republican Caucuses, and the Legislative Analyst. While none of the reports discussed the specific issue presented here or expressly referred to the existing public entity immunity for acts by the National Guard, the documents made clear that the purpose of the legislation was to render the federal government primarily liable for torts committed by members of the National Guard and to reduce costs to the state arising from National Guard activity. Significantly, none of the reports stated or implied in any way that the purpose of the legislation was to eliminate existing public entity immunity or to increase the scope of coverage for victims of torts by National Guard personnel.

[9]Vehicle Code section 17001 states: "A public entity *is liable* for death or injury to person or property proximately caused by a negligent or wrongful act or omission in the operation of any motor vehicle by an employee of the public entity acting within the scope of his employment." (Italics added.) Unlike section 816, Vehicle Code section 17001 *affirmatively* provides for public entity liability for acts of its employees so as to render section 815.2, subdivision (b) inapplicable. (See 1 Ops.Cal.Atty.Gen. 515, *supra* [Concluding § 392 "does not relieve the State from the liability *created* by [Veh. Code former] Section 400." (Italics added.)].)

the Attorney General affecting the subject matter of the proposed legislation. (*Burden* v. *Snowden, supra,* 2 Cal.4th at p. 564.) According to the House of Representatives Report on Public Law No. 97-384, a substantial majority of tort claims arising from the actions of National Guard personnel involve motor vehicle accidents. (See H.R.Rep. No. 97-384, 97th Cong., 2d Sess., pp. 3-4.) Thus, the Legislature could have legitimately concluded section 816 was necessary to ensure the state would no longer be held liable for injuries resulting from a National Guard's negligent operation of a motor vehicle if such injuries were compensated by the federal government.

The Chesters further argue our interpretation defeats the important societal goal of "compensating injured parties for damages caused by willful or negligent acts." While we are sympathetic with the plaintiffs' position and recognize the importance of the public policy in favor of compensating victims, we are not in a position to rewrite the statute in order to achieve this objective in this case. ██ We are also unpersuaded by the Chesters' reliance on the line of cases stating that in governmental tort cases courts must interpret statutes broadly in favor of liability and against public entity immunity. (See, e.g., *Ramos* v. *County of Madera* (1971) 4 Cal.3d 685, 692 [94 Cal.Rptr. 421, 484 P.2d 93]; *Larson* v. *City of Oakland* (1971) 17 Cal.App.3d 91, 98 [94 Cal.Rptr. 466].) Even assuming the language in those decisions accurately reflects the law in this state[10] and we apply a broad interpretation in favor of liability, we cannot ignore the plain meaning of the statute and construe its language "to accomplish a purpose that does not appear on the face of the statute or from its legislative history." (See *Burden* v. *Snowden, supra,* 2 Cal.4th at p. 562.)

██ Absent a California statute providing for liability, the state is immune from suit where, as here, the allegedly negligent employee is immune from suit. Contrary to the Chesters' assertions, there is nothing in section 816 providing for public entity liability in this situation. Accordingly, the court correctly granted summary judgment on the basis California is immune from suit pursuant to section 815, subdivision (b) and Military and Veterans Code section 392.

---

[10]More recent cases emphasize the purpose of the immunity statutes "is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances: immunity is waived only if the various requirements of the act are satisfied." (*Williams* v. *Horvath* (1976) 16 Cal.3d 834, 838 [129 Cal.Rptr. 453, 548 P.2d 1125]; *Cochran* v. *Herzog Engraving Co., supra,* 155 Cal.App.3d at p. 409; see also Christison & Hogue, California Government Tort Liability Practice (Cont.Ed.Bar 1991) p. 81 [criticizing the *Ramos* line of cases explaining those cases "contradict the statutory mandate of [Government Code section] 815 that '[e]xcept as otherwise provided by statute . . . a public entity is not liable . . . ,' as well as the Legislative Committee Comment thereto providing that 'the immunity provisions will as a general rule prevail over all sections imposing liability.' "]; 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 133, pp. 213-214.)

## DISPOSITION

Judgment affirmed.

Kremer, P. J., and Benke, J., concurred.