[No. B179370. Second Dist., Div. One. July 19, 2006.]

GENE HARRIS et al., Plaintiffs and Appellants, v.
VERIZON COMMUNICATIONS et al., Defendants and Respondents.

## COUNSEL

Law Office of William W. Palmer and William W. Palmer for Plaintiffs and Appellants.

Munger, Tolles & Olson, Henry Weissmann, Stuart N. Senator and James C. Rutten for Defendants and Respondents.

## OPINION

**VOGEL, J.—** The unclaimed property law (the UPL, Code Civ. Proc., §§ 1500–1582) protects unknown property owners by reuniting them with their property and giving the state, rather than the holders of the unclaimed property, the benefit of its use until it is claimed.[1] (*Harris v. Westly* (2004) 116 Cal.App.4th 214, 219 [10 Cal.Rptr.3d 343].) To these ends, stock held by a corporation escheats to the State of California if the shareholder (owner) has not communicated with the corporation for more than three years and if the owner's whereabouts are unknown, at which point the corporation must deliver duplicate stock certificates to the State Controller. (§ 1532, subd. (b); *Harris v. Westly, supra,* 116 Cal.App.4th at p. 219.)[2] Failure to comply with

---

[1] Undesignated section references are to the Code of Civil Procedure. A "holder" is "any person in possession of property subject to [the UPL] belonging to another, or who is trustee in case of a trust, or is indebted to another on an obligation subject to [the UPL]." (§ 1501, subd. (e).) An "owner" means any person with a legal or equitable interest in property subject to the UPL. (§ 1501, subd. (g).) An "apparent owner" means the person who appears from the holder's records to be entitled to the property held by the holder. (§ 1501, subd. (a).)

[2] Under the UPL, "a corporation . . . is required to . . . transfer stock to the Controller when the owner has not claimed a dividend or other sums or corresponded or otherwise indicated an interest in the stock for three years, and the corporation does not know the location of the owner at the end of that time." (*Harris v. Westly, supra,* 116 Cal.App.4th at p. 219.)

the escheat requirements subjects a corporation to fines and other penalties. (§§ 1576, 1577.)

■ Dividends accrued on escheated stock are credited to the owner's account until the shares are sold (securities listed on an established stock exchange must be sold within two years after receipt by the Controller). (§§ 1562, 1563, subd. (b).) After the sale, the Controller holds the proceeds and presale dividends for the benefit of the owner, who may at any time submit a claim for the full amount due (there is no statute of limitations). (§§ 1501.5, subd. (a), 1540, subd. (b), 1564.) The claim must be paid within 180 days and the claimant, if dissatisfied about the amount, may sue the Controller to resolve that dispute (§ 1541)—but the Controller is in all other respects immune from suit (§ 1566, subd. (b); *Fong v. Westly* (2004) 117 Cal.App.4th 841, 851–853 [12 Cal.Rptr.3d 76]). For its part, a corporation escheating stock is immune from an owner's suit for recovery of the stock, for interest, for damages stemming from the delivery of the stock to the Controller, and for any similar type of liability. (§§ 1532, subd. (b), 1321, 1560.)

In *Harris v. Westly, supra,* 116 Cal.App.4th 214, Division Eight of our court held that the Controller's immunity is absolute. In this case involving the same plaintiffs and the same stock, we reach the same result with regard to the corporation's immunity.

## FACTS

Gene Harris worked for GTE Corporation during the 1970's and 1980's, during which time GTE promised to (and did) give him shares in the corporation as a "fringe benefit" but (he claims) GTE did not give him stock certificates or any indicia of ownership.[3] In the late 1990's, Harris discovered that in 1990, without his knowledge, GTE transferred his GTE shares to the Controller, who sold them and held the proceeds on Harris's behalf. Harris submitted a claim to the Controller, which was paid in 1999. (*Harris v. Westly, supra,* 116 Cal.App.4th at p. 218.)[4] Harris nevertheless sued the Controller in September 2001, claiming the Controller was liable for damages resulting

---

[3] Our references to Harris include the other named plaintiffs (Peggy Lee Dominguez, Annette Schoon, Russ Garcia, and Julie Jackson), and our references to GTE include Verizon Communications, GTE's successor corporation.

[4] Harris alleged in his complaint that he learned about the GTE stock (that he owned it and that it had been delivered to the Controller) in 2000 or 2001, but the Controller's records establish that Harris's claim was paid in 1999, which necessarily means Harris knew everything he needed to know at that time. (*Harris v. Westly, supra,* 116 Cal.App.4th at p. 218, fn. 1.) Our resolution of this appeal on the basis of immunity makes it unnecessary for us to consider GTE's alternative challenge to the timeliness of Harris's lawsuit.

from the sale of his GTE stock because the sale had been held without notice to Harris. *Harris v. Westly, supra,* 116 Cal.App.4th 214, holds that the Controller is immune from suit, and that the notice provisions of the UPL "do not require the Controller to provide notice to apparent owners of escheated stock before the Controller sells the stock." (*Id.* at pp. 217, 224 [affirming a judgment in favor of the Controller].)

In October 2001, while his class action against the Controller was still pending, Harris filed this class action against GTE, alleging that it is liable for damages caused by its delivery of his shares to the Controller without notice to Harris.[5] Harris's second amended complaint seeks tort damages (for breach of fiduciary duty, negligence, conversion, and constructive fraud), statutory damages (for violations of the Securities Act of 1933 (15 U.S.C. § 77a et seq.), and Business and Professions Code section 17200 et seq.), and an accounting, all based on allegations that GTE "always knew" Harris's whereabouts, or could have readily found him, and thus had "wrongfully" delivered his stock to the Controller. Implicit in his claims is the notion that, had he received the stock before it escheated, he would have held onto it and ultimately sold it for more money than was obtained by the Controller.[6]

GTE demurred, contending (among other things) that Harris's claims were barred by the UPL's immunity provisions. Over Harris's opposition, the trial court sustained the demurrer without leave to amend, finding that the immunity conferred by the UPL is absolute, notwithstanding an allegation that the escheatment was wrongful. Harris appeals from the subsequently entered judgment of dismissal.

## DISCUSSION

Harris contends GTE's delivery of his shares to the Controller was unauthorized (because GTE did not give Harris the notice he claims was required by the UPL) and that, as a result, GTE is not entitled to the immunity afforded by the UPL. We disagree.

First, the immunity conferred by the UPL is absolute. Upon delivery to the Controller of duplicate stock certificates, the holder "shall be relieved from all liability of every kind to any person . . . for any losses or damages resulting to that person by the issuance and delivery to the Controller of the

---

[5] The case was removed to federal court where there were various presently irrelevant proceedings culminating in a remand to the superior court.

[6] As Harris puts it in his opening brief, at the time he discovered he "had been divested of [his] investments, [he] calculated that the shares represented by the original GTE certificates . . . were worth significantly more, and that there had been a merger of GTE into Verizon, which further enhanced the value of the stockholdings."

duplicate certificate . . . ." (§ 1532, subd. (b);[7] cf. *Fong v. Westly, supra,* 117 Cal.App.4th at pp. 851–853 [evidence of a violation of the UPL's notice provisions is irrelevant to the issue of the Controller's immunity]; *Harris v. Westly, supra,* 116 Cal.App.4th at p. 224 [the immunity conferred upon the Controller by section 1566 is absolute and unaffected by the Controller's failure to give notice of sale]; *Ley v. State of California* (2004) 114 Cal.App.4th 1297, 1304 [8 Cal.Rptr.3d 642].)[8] The fact that GTE allegedly failed to comply with the UPL's notice requirements thus cannot diminish the absolute immunity conferred by section 1532, subdivision (b).[9]

■ Second, as GTE observes, Harris's interpretation—that the immunity is conditional and vanishes if the escheatment was wrongful—would render the immunity meaningless because immunity comes into play when, and *only* when, the defendant is charged with wrongdoing. (*Stecks v. Young* (1995) 38 Cal.App.4th 365, 373–374 [45 Cal.Rptr.2d 475]; *Olney v. Sacramento County Bar Assn.* (1989) 212 Cal.App.3d 807, 812–813 [260 Cal.Rptr. 842] [the only time a defendant faces potential liability and the only time a statutory

---

[7] In its entirety, subdivision (b) of section 1532 provides: "The holder of any interest under subdivision (b) of Section 1516 [corporate stock] shall deliver a duplicate certificate to the Controller or shall register the securities in uncertificated form in the name of the Controller. *Upon delivering a duplicate certificate or providing evidence of registration of the securities in uncertificated form to the Controller, the holder, any transfer agent, registrar, or other person acting for or on behalf of the holder in executing or delivering the duplicate certificate or registering the uncertificated securities, shall be relieved from all liability of every kind to any person including, but not limited to, any person acquiring the original certificate or the duplicate of the certificate issued to the Controller for any losses or damages resulting to that person by the issuance and delivery to the Controller of the duplicate certificate or the registration of the uncertificated securities to the Controller.*" (Italics added.)

[8] As Division Six of our court explained in a different context, where "the language is unambiguous, 'we are bound by the words of the statute and must conclude the Legislature meant what it said.' . . . A statutory scheme that specifically precludes civil liability for a defendant's particular conduct accords such defendant absolute immunity. . . . Where absolute immunity exists, the plaintiff may not sue the immunized defendants by challenging the way they performed the immunized act. . . ." (*Ley v. State of California, supra,* 114 Cal.App.4th at p. 1303; and see *Chester v. State of California* (1994) 21 Cal.App.4th 1002, 1005 [26 Cal.Rptr.2d 575] [a statute providing that certain persons "shall not be liable for any act or acts done by them in the performance of their" duties "plainly immunizes [them] for their wrongful acts or omissions" because the statute does not "expressly provide otherwise"]; *Krikorian v. Barry* (1987) 196 Cal.App.3d 1211, 1215, 1218–1219 [242 Cal.Rptr. 312].)

[9] Harris's claim that GTE failed to comply with the notice requirements of section 1516, subdivision (d), ignores the fact that this notice requirement was not adopted until 1993, about three years after Harris's stock escheated. (Stats. 1993, ch. 692, § 4, pp. 3991–3992.) In 1990, there was no such notice requirement. (Former § 1516; and see *Harris v. Westly, supra,* 116 Cal.App.4th at p. 222, fn. 13 ["the pre-July 31, 1990 version of the statute is irrelevant, as it is undisputed that Harris's stock escheated to the state on November 1, 1990. Section 1531 at that time required the Controller to publish notice within one year of delivery of the escheated stock to the state . . . . Notice to the apparent owner was not a 'condition precedent' to placing the property in the Controller's custody"].)

immunity is called into play is when a plaintiff asserts the defendant erred, and "[w]e cannot adopt an interpretation of the statute which allows the statute to have effect only in those situations where it serves no function"]; *Storch v. Silverman* (1986) 186 Cal.App.3d 671, 678 [231 Cal.Rptr. 27].)

Third, the Legislature's adoption of a rule of absolute immunity is consistent with the purpose of the UPL, which is to give the state rather than the holders of unclaimed property the benefit of its use. (*Douglas Aircraft Co. v. Cranston* (1962) 58 Cal.2d 462, 463 [24 Cal.Rptr. 851, 374 P.2d 819].) Without this protection, holders of unclaimed property concerned about lawsuits such as this class action would likely err on the side of retaining rather than delivering unclaimed property to the Controller, thereby depriving the state of the benefit of its use. The Legislature, faced with a choice between absolute immunity (which promotes delivery of unclaimed property to the Controller but provides only limited redress to the owners of the property) and conditional immunity (which would have discouraged delivery but allowed redress), plainly and unambiguously opted for absolute immunity. (§ 1532, subd. (b); cf. *Kaucky v. Southwest Airlines Co.* (7th Cir. 1997) 109 F.3d 349, 353 [statutory scheme compelling transfer of funds to government and confining suits to claims for refund protects corporations "from being whipsawed"].)[10]

For these reasons, the demurrer was properly sustained without leave to amend.

## DISPOSITION

The appeal is dismissed. The parties are to pay their own costs of appeal.[11]

Spencer, P. J., concurred.

---

[10] We summarily reject Harris's remaining points, beginning with his contention that the concept of "absolute immunity" is inconsistent with and thus subordinate to a corporate holder's common law fiduciary duties to minority shareholders. Implicit in this claim is Harris's assumption that the corporation's delivery to the Controller is unauthorized. It is not—because a delivery compelled by statute cannot constitute a breach of fiduciary duty. Harris's other contention—that our decision should be influenced by *Taylor v. Westly* (9th Cir. 2005) 402 F.3d 924 and *Suever v. Connell* (9th Cir. 2006) 439 F.3d 1142—ignores the fact that *Taylor* and *Suever* do not address corporate immunity. These decisions criticize the California Controller for the manner in which the UPL is enforced, no more and no less, and they are not authority for an issue that was not considered. (*Chevron U.S.A., Inc. v. Workers' Comp. Appeals Bd.* (1999) 19 Cal.4th 1182, 1195 [81 Cal.Rptr.2d 521, 969 P.2d 613].)

[11] After this appeal was set for oral argument, the parties advised us they were in the midst of settlement discussions and asked for a continuance. The continuance was granted, with a notice to the parties that we viewed the issue in this case as one to be resolved by a published opinion—but that we would defer our decision to allow them to conclude their negotiations, after which we would file our opinion, albeit one dismissing the appeal if that was their preference. The parties thereafter settled the case and asked us to dismiss the appeal with prejudice, and that is what we have done.

**MALLANO, J., Dissenting.**—I dissent.

This case involves the duties of a corporation, defendant GTE Corporation, to plaintiffs, minority shareholders of GTE, *before* the minority shareholders' GTE stock was delivered to the State of California under California's Unclaimed Property Law (UPL) (Code Civ. Proc., § 1500 et seq.).[1] The trial court sustained GTE's demurrer on the ground that GTE was afforded immunity under the UPL. But, given the claims asserted in the second amended complaint (complaint), the UPL's immunity provisions cannot reasonably be interpreted to apply to the circumstances here, where plaintiffs allege that GTE breached a fiduciary duty to give them a fair opportunity to prevent the operation of the UPL in the first instance. Imposing a duty on GTE to honor plaintiffs' rights as stockholders is consistent with one of the purposes of the UPL—"to reunite owners with unclaimed funds or property." (*Bank of America v. Cory* (1985) 164 Cal.App.3d 66, 74 [210 Cal.Rptr. 351].) Accordingly, I conclude that plaintiffs' claims are not in derogation of any rights of the state or GTE under the UPL and that the demurrer was erroneously sustained because facts are alleged that plaintiffs' damages arose from conduct which is outside the scope of the immunity provisions of the UPL. And GTE's argument that the demurrer can be sustained on the alternative ground of the bar of the statute of limitations is also without merit.

## I

### CALIFORNIA'S UNCLAIMED PROPERTY LAW

"Escheat, at common law in England, formerly terminated a tenancy so that on the death of a tenant without heirs, or as a result of a tenant's felony that worked a corruption of the blood, the land escheated to the lord of the fee. Title by escheat 'was one of the fruits of and consequences of feudal tenure.' 'But, as the feudal tenures do not exist in this country, there are no private persons who succeed to the inheritance by escheat; and the state steps in the place of the feudal lord, by virtue of its sovereignty, as the original and ultimate proprietor of all the lands within its jurisdiction.' Escheat of tangible or intangible personal property arises from the same conceptual scheme." (*Taylor v. Westly* (9th Cir. 2005) 402 F.3d 924, 926, fns. omitted (*Taylor*).) "The California statutes distinguish between 'escheat' and 'permanent escheat.' Where the property has not 'permanently' escheated to the state, the state's Unclaimed Property Law sets up a custodial escheat system. The

---

[1] Unspecified statutory references are to the Code of Civil Procedure.

statute explicitly states that 'property received by the state under this chapter shall not permanently escheat to the state.' It provides that the Controller must 'safeguard and conserve' unclaimed property in a trust fund for the interests of all parties having an interest in the property." (*Id.* at p. 930, fns. omitted.)

The court in *Fong v. Westly* (2004) 117 Cal.App.4th 841 [12 Cal.Rptr.3d 76] (*Fong*) provided the following summary of the UPL: "The law has two objectives: (1) protect unknown property owners by locating them and restoring their property to them, and (2) give the state, rather than the owners of the unclaimed property, the benefits of holding the property, since experience shows most abandoned property will never be claimed. [Citation.] [¶] The statute does not operate a true escheat. The law expressly provides title to property received by the state under its provisions does not pass to the state. (§ 1501.5.) The state holds the property as a custodian until the property's rightful owner can claim the property. [¶] In general, the law declares certain personal property either located in the state or owned by a California resident escheats to the state when its owner fails to take enumerated steps during a period of time indicating continued active ownership, such as increasing or decreasing the amount on deposit, corresponding with the holder of the property, or otherwise indicating a continuing interest in the property. (See, e.g., § 1513.) Holders of such property must give property owners mailed notice of the pending escheat if the holder has the owner's address in its records. (§ 1513.5.) [¶] If the owner fails to claim the property, the statute requires holders to make a verified report to the State Controller, identifying the property owner's name and last known address and describing the property. (§ 1530.) The holder files the report and, at the same time, transfers the property to the Controller. (§ 1532.)" (*Fong, supra,* 117 Cal.App.4th at pp. 844–845.)

With respect to stock, section 1516 provides in pertinent part that, as long as other conditions are met, "any intangible interest in a business association, as evidenced by the stock records or membership records of the association, escheats to this state if (1) the interest in the association is owned by a person who for more than three years has neither claimed a dividend or other sum . . . nor corresponded in writing with the association or otherwise indicated an interest as evidenced by a memorandum or other record on file with the association, and (2) the association does not know the location of the owner at the end of the three-year period." (§ 1516, subd. (b).)

"Within one year after receiving the holder's report and the property described therein, the Controller must cause a notice to be published in a

newspaper of general circulation to inform the property owners of the escheat. (§ 1531.) [¶] The Controller in general sells all escheated property to the highest bidder, except that with regards to securities traded on an established exchange, the Controller sells the securities within two years of its receipt on that exchange at the prevailing prices. (§ 1563.) The Controller is required to publish one-week's prior notice of any sale, except that no notice is required for a sale of securities on a national exchange. (*Ibid.*) [¶] Any person who claims an interest in property escheated to the state may file a claim 'to the property or to the net proceeds from its sale.' (§ 1540, subd. (a).) If the Controller grants the claim, the Controller returns the property or the proceeds from its sale to the claimant, along with a payment of interest at a specified rate. (Former § 1540, subd. (c); Stats. 1998, ch. 1029, § 1.)" (*Fong, supra,* 117 Cal.App.4th at p. 845.)

"It used to be, until the seventies, that the period of inaction before the property was deemed 'unclaimed' was sixteen years. Now it has been shortened to three years. Also, until 1989, the Bureau of Unclaimed Property published the names of shareholders, whose shares were thought to be unclaimed, in newspapers in each county that listed an address for the individual. The Controller also used to maintain a staff, in the 1980's, to find owners and get their property back to them. [¶] Now the Controller just publishes advertisements describing their general practices . . . . [¶] [I]n a font smaller than the main text, the ad does not claim to comply with the law, but instead admits that it is 'in lieu of CCP 1531.' . . . Thus the Controller is admitting right in her ad that she is violating the law!" (*Taylor, supra,* 402 F.3d at pp. 927–928, fns. omitted.) In 1997, section 1531 of the UPL was amended to no longer require publication of names and requires direct mailing only if the escheated account contains a Social Security number. (*Taylor, supra,* 402 F.3d at p. 928, fn. 3.)

The allegations of plaintiffs' complaint are viewed in the context of the foregoing statutory scheme.

## II

### ALLEGATIONS OF PLAINTIFFS' COMPLAINT[2]

Gene Harris is one of five named plaintiffs who bring this action on behalf of themselves and as members of an alleged class of approximately 8,500

---

[2] In opposition to the demurrer, plaintiffs expressly abandoned their cause of action for violation of federal securities laws, so I do not discuss this claim.

Plaintiffs filed this action on October 15, 2001. GTE removed the case to federal court. After proceedings which are not pertinent here, the complaint was remanded to state court in February 2004.

minority shareholders of GTE and Verizon Communications, the successor to GTE after a merger in June 2000. Each of the plaintiffs was an employee of GTE whose employment relationship "entitled them to GTE and Verizon's fringe benefits on a non-discriminatory basis . . . ." Plaintiffs, who worked for GTE during the 1970's and 1980's, were entitled to GTE stock "as an incentive to actively participate in the creation and growth of the company."[3]

Liberally construed in favor of plaintiffs, the complaint alleged that GTE knew plaintiffs' identities, location, and vital information, and that GTE's own records provided information from which their whereabouts could be easily ascertained, but GTE failed to inform plaintiffs of their stock ownership, retained possession of their stock certificates, failed to calculate their dividends and interest, failed to provide them with notices and information required by law, failed to notify them of annual and special shareholders' meetings, prevented plaintiffs from voting, and "deprived Plaintiffs of knowledge and the ability to take action with respect to their ownership interests in the corporations, including the ability to liquidate their interests, should they have determined that it was in their favor to do so."

During the 18 months before they filed their action, plaintiffs "learned that they owned stock in GTE that was improperly transferred without their authorization and sold without their knowledge. The proceeds from the sale of Plaintiffs' stock were deposited in government accounts in the State of California where the stock is listed under their names, as shareholders of GTE and Verizon, and stating the stock is lost and unclaimed property."[4]

Plaintiffs asserted claims for breach of fiduciary duty, negligence, conversion, constructive fraud, accounting, and unfair competition under Business and Professions Code section 17200 et seq.

GTE filed a demurrer to the complaint on two grounds: (1) The complaint was barred by the three- or the four-year statutes of limitations governing the

---

[3] These allegations were omitted from the second amended complaint but appeared in the original complaint.

[4] According to the appellate opinion in *Harris v. Westly* (2004) 116 Cal.App.4th 214 [10 Cal.Rptr.3d 343], which upheld the trial court's judgment on the pleadings in favor of the Controller in plaintiffs' action for injunctive and other relief, "an investigation revealed that GTE had issued duplicate shareholder certificates and delivered them to the California Controller. The Controller's records show the stock escheated to the State of California on November 1, 1990. The Controller sold the stock, without notice to Harris, and deposited the funds from the sale in the Unclaimed Property Fund. The Controller's records show that Harris [and three of the other named plaintiffs] filed claims and, on various dates in 1999, received payment for their shares of GTE stock from the State of California." (*Harris v. Westly, supra,* 116 Cal.App.4th at p. 218 [holding that the sale of escheated stock without notice to the owner does not violate the due process provisions of the federal or state Constitutions].)

various claims because the causes of action allegedly accrued "sometime 'during the 1970s and 1980s' " and the statutes expired "long before Plaintiffs belatedly filed suit in 2001." (2) GTE was immune from suit pursuant to the provisions of section 1532, subdivision (b), of the UPL.[5] In opposition to the demurrer, plaintiffs argued, among other things, that affording immunity to GTE in the instant circumstances would violate principles of due process and would also "render meaningless all law requiring corporate fiduciaries to diligently attempt to inform shareholders of corporate actions regarding their stock, and to obtain authorization before selling or transferring their stock, as well as render meaningless many other statutory provisions governing corporate duties to shareholders."

After a hearing on September 29, 2004, the court overruled the demurrer on statute of limitations grounds, but sustained the demurrer without leave to amend "on the ground that [GTE] is immune from liability under California's escheatment statutes. The court finds that in *Harris v. Westly*, [*supra*, 116 Cal.App.4th 214], the companion case filed by these plaintiffs against the State Controller, the Court of Appeal acknowledges that GTE delivered duplicate copies of the stock certificates to the State Controller. This finding of fact by the Court of Appeal is the law in this case. Accordingly, pursuant to Code of Civil Procedure section 1532, 1321, and 1560, GTE is absolutely immune from liability to the plaintiffs."[6]

Plaintiffs appealed from the order of dismissal. They contend, among other things, that the immunity afforded GTE under the UPL is "subordinate" to the common law and statutory fiduciary duties owed by GTE to its minority

---

[5] Section 1532, subdivision (b), provides: "The holder of any interest under subdivision (b) of Section 1516 shall deliver a duplicate certificate to the Controller or shall register the securities in uncertificated form in the name of the Controller. Upon delivering a duplicate certificate or providing evidence of registration of the securities in uncertificated form to the Controller, *the holder*, any transfer agent, registrar, or other person acting for or on behalf of the holder in executing or delivering the duplicate certificate or registering the uncertificated securities, *shall be relieved from all liability of every kind to any person* including, but not limited to, any person acquiring the original certificate or the duplicate of the certificate issued to the Controller *for any losses or damages resulting to that person by the issuance and delivery to the Controller of the duplicate certificate* or the registration of the uncertificated securities to the Controller." (Italics added.)

The version of section 1532, subdivision (b) in effect in November 1990, when Harris's stock escheated to the state, did not contain provisions for uncertificated securities but in all other respects was substantially similar to the current version of the statute.

[6] Section 1321 provides immunity from suit to holders of "money or other property" delivered to the Controller. Section 1560, subdivision (a) similarly provides immunity from suit to holders who have paid or delivered escheated property to the Controller and that the Controller "shall assume custody and shall be responsible for the safekeeping of the property."

shareholders and that the UPL must be construed to be in harmony with those duties and other law. Under the allegations of this complaint, I agree.

## III

## DISCUSSION

"We review matters of statutory construction de novo." (*Kim v. Superior Court* (2006) 136 Cal.App.4th 937, 940 [39 Cal.Rptr.3d 338].) In construing a statute, we do not consider statutory language in isolation. (*People v. Mendoza* (2000) 23 Cal.4th 896, 907 [98 Cal.Rptr.2d 431, 4 P.3d 265] (*Mendoza*).) The Legislature is also presumed to have enacted legislation with existing law in mind. (*Fujitsu IT Holdings, Inc. v. Franchise Tax Bd.* (2004) 120 Cal.App.4th 459, 485 [15 Cal.Rptr.3d 473].) Courts "look to 'the entire substance of the statute . . . in order to determine the scope and purpose of the provision . . . . [Citation.]' " (*Mendoza, supra*, 23 Cal.4th at pp. 907–908.) The words of a statute are construed in context and in light of the nature and obvious purpose of the statute. (*Id.* at p. 908.) "We must also avoid a construction that would produce absurd consequences, which we presume the Legislature did not intend." (*Ibid.*) "It is an elementary rule of statutory construction that the Legislature will never be presumed to have intended an unjust result." (*Brennfleck v. Workmen's Comp. App. Bd.* (1970) 3 Cal.App.3d 666, 673 [84 Cal.Rptr. 50].) Decisional authority also directs "that statutes not be construed in a manner leading to an absurdity, if they may be construed to achieve justice and common sense." (*Bank of America v. Cory, supra*, 164 Cal.App.3d at p. 75.)

GTE does not challenge plaintiffs' assertion that GTE owed fiduciary duties to plaintiffs. Rather, GTE maintains, and the trial court agreed, that the UPL affords it immunity for its alleged breach of such duties.

But the language of section 1532, subdivision (b) provides immunity only for losses and damages resulting from "the issuance and delivery to the Controller of the duplicate [stock] certificate." (See fn. 5, *ante*.) The complaint asserts, among other things, that GTE's failure to fulfill its corporate duties to its shareholders prevented them from taking action with respect to their shares, thus impairing their ability to liquidate their interests at a time of their choosing, and not at the time chosen by GTE or the Controller. If plaintiffs suffered damages because GTE's conduct prevented them from exercising their right to sell their stock *before* GTE delivered the shares to the Controller on November 1, 1990, then such damages would *not* have resulted from the issuance and delivery of the duplicate certificates to the Controller. Plaintiffs'

damages would have resulted from conduct which antedated any obligation of GTE under the UPL to deliver plaintiffs' stock to the Controller. And GTE's alleged failure denied plaintiffs the opportunity to vote, cash dividend checks, or communicate in writing with GTE, which simple steps would have avoided delivery of their shares to the Controller in the first instance.

There is no language in sections 1532, 1321, or 1560, which purports to provide immunity for holders based on wrongful conduct which caused damage to plaintiffs *before* duplicate certificates are delivered to the Controller. And there is no language in those sections which purports to abrogate a corporation's duties to its shareholders under the common law and under statutes other than the UPL. I thus conclude that the foregoing sections do not afford GTE immunity as against the allegations of the complaint, which raises factual issues as to the nature of plaintiffs' losses or damages and whether such damages resulted from GTE's conduct *other than* its delivery of the duplicate certificates to the Controller.

An interpretation of the holder immunity provisions of the UPL so as to deny immunity to GTE with respect to the instant allegations also is consistent with the purposes of the UPL and with common sense and justice. The two purposes of the UPL are "(1) to reunite owners with unclaimed funds or property, and (2) to give the state, rather than the holder, the benefit of the use of unclaimed funds or property." (*Bank of America v. Cory, supra,* 164 Cal.App.3d at p. 74.) In this case, the state has had the benefit of the use of plaintiffs' funds and the state has paid four of the plaintiffs on their claims after the Controller had sold their stock. (See fn. 4, *ante.*) Thus, plaintiffs' pursuit of this action against GTE has no impact with respect to the second purpose of the UPL.

But the first purpose of the UPL—to reunite plaintiffs with their unclaimed property—can only be furthered by permitting plaintiffs to pursue their claims against GTE. Affording GTE immunity for the alleged breaches of fiduciary duty here would provide no incentive to GTE *ever* to honor its duties to its minority shareholders in connection with their stock ownership and attendant rights, an absurd result that cannot be imputed as the Legislature's intention. And GTE provides no authority to support the proposition that the immunity provisions of the UPL extend so far as to absolve it from the failure to perform its duties to its shareholders at a time before the duplicate stock certificates were delivered to the Controller. For all of the foregoing reasons, I conclude that facts are alleged that preclude application of the immunity defense at this time and that the demurrer was improperly sustained on this ground.

The demurrer also cannot be upheld on the ground of the statute of limitations because the complaint alleges facts sufficient to invoke the doctrines of equitable tolling and equitable estoppel and does not reveal on its face that the action is necessarily barred by the applicable statutes of limitations. (*Leasequip, Inc. v. Dapeer* (2002) 103 Cal.App.4th 394, 400 [126 Cal.Rptr.2d 782] [demurrer based on statute of limitations will not lie where action may be, but is not necessarily, barred].)

I would reverse the order of dismissal and direct the trial court to overrule GTE's demurrer.