163 Cal.App.4th 303 (2008)
AZURE LIMITED, Plaintiff and Appellant,
v.
I-FLOW CORPORATION, Defendant and Respondent.
No. G038167.
Court of Appeals of California, Fourth District, Division Three.
May 27, 2008.
*305 Shapiro, Rodarte & Freedman, Carl W. Shapiro, Leora D. Freedman and Thomas W. Foote for Plaintiff and Appellant.
Gibson, Dunn & Crutcher, Jeffrey H. Reeves, J. Scot Kennedy and John N. Carter for Defendant and Respondent.

OPINION
IKOLA, J.
Plaintiff Azure Limited owned nearly 19,000 shares of defendant I-Flow Corporation's stock. Plaintiff alleged defendant wrongly transferred the shares to the State of California as escheated property without notice. The court granted judgment on the pleadings, finding the Unclaimed Property Law (UPL) (Code Civ. Proc., § 1500 et seq.)[1] immunized defendant from any such liability.
*306 (1) We disagree. The UPL immunizes corporations from civil liability only when they transfer escheated shares to the state in compliance with the provisions of the UPL. The UPL does not immunize corporations like defendant who allegedly transfer nonescheated shares to the state without giving the required notice. We reverse.

THE ALLEGED FACTS
According to its complaint, plaintiff acquired nearly 95,000 shares of defendant's stock in 1990. It exchanged those shares in 1993 for almost 19,000 new shares pursuant to a reverse stock split. In 2003, plaintiff learned defendant had transferred its shares to the state as escheated property. Plaintiff asked the state to return its shares; the state told plaintiff it would receive any proceeds from the sale of its shares. In November 2004, when defendant's common stock traded for $17.72 per share, plaintiff learned the state had sold its shares in June 2003 for $4.62 per share.
Plaintiff sued defendant for breach of fiduciary duty. It alleged defendant knew its location at all times, wrongly treated the shares as escheated, and transferred the shares to the state without giving any notice. It sought to recover the difference between the sales proceeds and the shares' fair market value as of November 2004. The court granted judgment on the pleadings, finding the UPL granted absolute immunity to defendant. It entered judgment for defendant accordingly.

DISCUSSION
"Review of a judgment on the pleadings requires the appellate court to determine, de novo and as a matter of law, whether the complaint states a cause of action. [Citation.] For purposes of this review, we accept as true all material facts alleged in the complaint." (Ott v. Alfa-Laval Agri, Inc. (1995) 31 Cal.App.4th 1439, 1448 [37 Cal.Rptr.2d 790] (Ott).)
"Under the [UPL], certain types of unclaimed property escheat[] to the state. [Citation.] The law has two objectives: (1) protect unknown property owners by locating them and restoring their property to them, and (2) give the state, rather than the owners of the unclaimed property, the benefits of holding the property, since experience shows most abandoned property will never be claimed." (Fong v. Westly (2004) 117 Cal.App.4th 841, 844 [12 Cal.Rptr.3d 76].) Three of the UPL's provisions are relevant here.
*307 First, the UPL sets forth when corporate stock escheats to the state. It provides, "[A]ny intangible interest in a business association, as evidenced by the stock records or membership records of the association, escheats to this state if (1) the interest in the association is owned by a person who for more than three years has neither claimed a dividend or other sum referred to in subdivision (a) nor corresponded in writing with the association or otherwise indicated an interest as evidenced by a memorandum or other record on file with the association, and (2) the association does not know the location of the owner at the end of the three-year period." (§ 1516, subd. (b).)
(2) Second, it requires corporations to notify shareholders of potentially escheated stock. It provides, "With respect to any interest that may escheat pursuant to subdivision (b), the business association shall make reasonable efforts to notify the owner by mail that the owner's interest in the business association will escheat to the state. The notice shall be given not less than 6 nor more than 12 months before the time the interest in the business association becomes reportable to the Controller in accordance with this chapter." (§ 1516, subd. (d).) The corporation must report escheated stock to the state annually before November 1. (§ 1530, subd. (d).)
Third, it requires corporations to transfer escheated stock to the state and immunizes them from any civil liability for doing so. It provides that the corporation "shall deliver a duplicate [stock] certificate to the Controller" when it files its report. (§ 1532, subd. (d); § 1532, former subd. (b); see id., former subd.(a).)[2] It further provides, "Upon delivering a duplicate certificate... the holder ... shall be relieved from all liability of every kind to any person ... for any losses or damages resulting to that person by the issuance and delivery to the Controller of the duplicate certificate...." (§ 1532, subd. (d); see id., former subd. (b).)
Defendant asserts it has immunity from liability for allegedly transferring plaintiff's shares. It contends the UPL grants it immunity even if it violated the UPL by transferring nonescheated shares with knowledge of plaintiff's location and without giving notice.
*308 Defendant relies heavily upon Harris v. Verizon Communications (2006) 141 Cal.App.4th 573 [46 Cal.Rptr.3d 185] (Verizon). In that case, the plaintiff asserted breach of fiduciary duty and other causes of action against the defendant, who had allegedly transferred the plaintiff's shares to the state without notice. (Id. at p. 577.) The trial court sustained the defendant's demurrer, and the Verizon court affirmed. (Id. at pp. 577, 579.) It held, "the immunity conferred by the UPL is absolute" (id. at p. 577), and "the fact that [the defendant] allegedly failed to comply with the UPL's notice requirements thus cannot diminish the absolute immunity conferred by" the UPL. (144 Cal.App.4th at p. 578.) Any other interpretation "would render the immunity meaningless because immunity comes into play when, and only when, the defendant is charged with wrongdoing." (Ibid.)
We decline to follow Verizon for three reasons.
First, Verizon's discussion of the notice requirement is unnecessary dicta. The UPL did not yet have a notice requirement when the shares in that case were transferred: "Harris's claim that [the defendant] failed to comply with the notice requirements of section 1516, subdivision (d), ignores the fact that this notice requirement was not adopted until 1993, about three years after Harris's stock escheated." (Verizon, supra, 141 Cal.App.4th at p. 578, fn. 9, italics added.) Thus, the court had no reason to decide whether the UPL immunized a corporation that violated the notice requirement. "[G]eneral observations unnecessary to [a] decision ... are dicta, with no force as precedent." (Fireman's Fund Ins. Co. v. Maryland Casualty Co. (1998) 65 Cal.App.4th 1279, 1301 [77 Cal.Rptr.2d 296] [declining to follow dicta].)
(3) Second, Verizon misconstrued the UPL. Immunity applies only to "[t]he holder of any interest under subdivision (b) of Section 1516." (§ 1532, subd. (d); § 1532, former subd. (b), italics added.) And a "holder" under the UPL is, inter alia, "any person in possession of property subject to this chapter belonging to another...." (§ 1501, subd. (e), italics added.) As relevant here, the property "subject to this chapter" is described in section 1516 as "intangible interests in a business association, as evidenced by the stock records or membership records of the association," that "escheat[] to th[e] state" when (1) the shareholder fails to claim a dividend or correspond with the corporation for three years, and (2) the corporation does not know the shareholder's location. (§ 1516, subd. (b).) "With respect to the interest, the business association shall be deemed the holder." (Ibid.) Thus, plaintiff's stock ownership interest is not "subject to this chapter" unless the conditions *309 of escheat are met. And, by definition, defendant does not become a "holder" until the property is, in fact, "subject to this chapter." Thus, defendant is a "holder" of an interest and has statutory immunity only if plaintiff's shares "escheat[ed] to th[e] state"i.e., only if plaintiff failed to claim dividends or communicate for three years and defendant did not know its location. (§ 1516, subd. (b).) But plaintiff alleged defendant knew its location at all times. Accepting this allegation as true (Ott, supra, 31 Cal.App.4th at p. 1448), we conclude plaintiff's shares did not escheat to the state, defendant was not a holder of an interest under section 1516, subdivision (b), and thus defendant does not qualify for immunity under the UPL.[3]
(4) Third, we agree with the dissenting opinion in Verizon. The dissent concluded "the UPL's immunity provisions cannot reasonably be interpreted to apply to the circumstances here, where plaintiffs allege that [the defendant] breached a fiduciary duty to give them a fair opportunity to prevent the operation of the UPL in the first instance." (Verizon, supra, 141 Cal.App.4th at p. 580 (dis. opn. of Mallano, J.).)
Under the analysis of the dissenting opinion in Verizon, there is no immunity for wrongful acts predating the transfer of shares to the state. The dissent noted "the language of section 1532, subdivision (b) provides immunity only for losses and damages resulting from `the issuance and delivery to the Controller of the duplicate [stock] certificate.'" (Verizon, supra, 141 Cal.App.4th at p. 585 (dis. opn. of Mallano, J.).) Thus, "[i]f plaintiffs suffered damages because [the defendant's] conduct prevented them from exercising their right to sell their stock before [the defendant] delivered the shares to the Controller ..., then such damages would not have resulted from the issuance *310 and delivery of the duplicate certificates to the Controller. Plaintiffs' damages would have resulted from conduct which antedated any obligation of [the defendant] under the UPL to deliver the plaintiffs' stock to the Controller." (Id. at pp. 585-586 (dis. opn. of Mallano, J.).) In contrast, "[t]here is no language in sections 1532, 1321, or 1560, which purports to provide immunity for holders based on wrongful conduct which caused damage to plaintiffs before duplicate certificates are delivered to the Controller." (Id. at p. 586.)
The Verizon dissent aptly invoked the policy underlying the UPL. "[T]he first purpose of the UPLto reunite plaintiffs with their unclaimed propertycan only be furthered by permitting plaintiffs to pursue their claims against [the defendant]. Affording [the defendant] immunity for the alleged breaches of fiduciary duty here would provide no incentive to [the defendant] ever to honor its duties to its minority shareholders in connection with their stock ownership and attendant rights, an absurd result that cannot be imputed as the Legislature's intention." (Verizon, supra, 141 Cal.App.4th at p. 586 (dis. opn. of Mallano, J.).)
The Verizon dissent's analysis is persuasive. Section 1532, subdivision (d) provides immunity for liability resulting from "the issuance and delivery to the Controller of the duplicate [stock] certificate...." Here, plaintiff's claim stems from the alleged prior wrongful conduct of (1) characterizing plaintiff's stock as escheated property when it was not; and (2) failing to give notice of that determination to plaintiff. The UPL required defendant to notify plaintiff about the potential escheatment six to 12 months before defendant filed its report and transferred the shares to the state. (§ 1516, subd. (d).) Had defendant done so, plaintiff would have been able to contact defendant and (presumably) prevent the very transfer of its shares that triggered defendant's purported immunity.
(5) And as the Verizon dissent notes, any other construction of the immunity provision is absurd. Defendant and the Verizon majority would read the UPL as immunizing reckless transfers of nonescheated shares to the state without notice. Such overbroad immunity would remove any "incentive to [a corporation] ever to honor its duties to its minority shareholders in connection with their stock ownership and attendant rights." (Verizon, supra, 141 Cal.App.4th at p. 586 (dis. opn. of Mallano, J.).) More alarmingly, it would immunize intentional wrongdoing. It would allow corporations to oust troublesome minority shareholders with impunity simply by transferring their *311 shares to the state without notice, regardless of whether the shares were ever truly escheated. "We presume the Legislature did not intend such an absurd result." (City of Cotati v. Cashman (2002) 29 Cal.4th 69, 77 [124 Cal.Rptr.2d 519, 52 P.3d 695].)
Contrary to the concerns of defendant and the Verizon majority, construing the UPL as immunizing only corporations that comply with the UPL does not render the immunity worthless. (Verizon, supra, 141 Cal.App.4th at p. 578.) Corporations that comply with the UPL are immunized from claims that the corporations breached contractual or fiduciary duties over and above the UPLthey are immunized from claims that they should have done more than the UPL requires. The value of this immunity is not lessened by maintaining the liability of corporations that do less than the UPL demands.
And defendant wrongly contends the Legislature implicitly adopted Verizon's construction of the immunity provision. In 2007, after Verizon was decided, the Legislature amended subdivision (a) of section 1532, added new subdivisions, and redesignated subdivision (b)the immunity provisionas subdivision (d) without change. (Stats. 2007, ch. 179, § 4.)
(6) We do not see how a nonsubstantive renumbering of the subdivision containing the immunity provision constitutes a legislative endorsement of Verizon, or anything other than an attempt to make room for new subdivisions. "Legislative silence is a poor beacon to follow in discerning the proper statutory route," as the United States Supreme Court reminds us. (Zuber v. Allen (1969) 396 U.S. 168, 185 [24 L.Ed.2d 345, 90 S.Ct. 314].) "Congressional inaction frequently betokens unawareness, preoccupation, or paralysis. `It is at best treacherous to find in congressional silence alone the adoption of a controlling rule of law.' ... Where, as in the case before us, there is no indication that a subsequent Congress has addressed itself to the particular problem, we are unpersuaded that silence is tantamount to acquiescence, let alone ... approval...." (Id. at pp. 185-186, fn. 21; accord, Aaron v. SEC (1980) 446 U.S. 680, 694, fn. 11 [64 L.Ed.2d 611, 100 S.Ct. 1945] [Congress did not endorse SEC's interpretation of securities law when it amended securities statutes without overruling that interpretation, "since the legislative consideration of those statutes was addressed principally to matters other than that at issue here"].) We see no positive indication from the Legislature that it intended to immunize corporations that flout the UPL.

*312 DISPOSITION
The judgment is reversed. The matter is remanded with directions to the court to vacate its order granting the motion for judgment on the pleadings and to enter a new order denying the motion. Plaintiff shall recover its costs on appeal.
Bedsworth, Acting P. J., and Fybel, J., concurred.
NOTES
[1] All further statutory references are to the Code of Civil Procedure.
[2] When defendant allegedly transferred plaintiff's shares, section 1532, former subdivision (a), provided that the stock be transferred when the report was filed, and former subdivision (b) contained the transfer and immunity provision. In 2007, section 1532, subdivision (a), was amended to require a seven-month delay between filing the report and transferring the stock, and subdivision (b) was redesignated without change as subdivision (d). (Stats. 2007, ch. 179, § 4.)
[3] Defendant argues that the word "holder," as used in section 1532, subdivision (d), is not limited to those corporations whose stock records show the existence of shares satisfying the conditions of escheat, but refers instead more broadly to any corporation that makes a transfer of duplicate stock certificates to the state, even though the shares represented by the certificate do not meet the conditions of escheat. Defendant notes in this regard that the Legislature knew how to refer to "escheated property," and its failure to specifically use that phrase in the immunity provision signifies that immunity was not so limited. As an example, defendant notes that section 1561 requires the state to defend transferors of "escheated property," defined as "property which this chapter provides escheats to this state." (§ 1561, subds. (a), (c).) But this reference to "escheated property" does not entail that the immunity provision applies to shares that have not escheated. Under section 1516, until the conditions of escheat are met, the corporation possesses merely its records of stock ownership evidencing the shareholders' ownership interests. It does not become the "holder" of that interest for purposes of the UPL until the property has escheated. And only a "holder" is entitled to the statutory immunity.