Filed 3/4/14  Vondjidis v. Hewlett Packard Co. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| ALEXANDER VONDJIDIS, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> HEWLETT PACKARD COMPANY, <br><br> Defendant and Respondent. | H037081 <br> (Santa Clara County <br> Super. Ct. No. CV815388) |

Appellant Alexander Vondjidis challenges the trial court's order denying his motion for class certification of his action against respondent Hewlett Packard Corp. (HP) alleging that HP had improperly transferred HP stock to the State of California (the State) under California's Unclaimed Property Law (UPL) (Code Civ. Proc., § 1300 et seq.).[1]  The UPL provides that stock "escheats to this state if" the owner of the stock has not, for a specified number of years, claimed a dividend or "corresponded in writing [with the corporation] . . . or otherwise indicated an interest" in the stock, and the corporation "does not know the location of the owner at the end of the [specified]

---

[1]  Subsequent statutory references are to the Code of Civil Procedure unless otherwise specified.

period."[2]  (§ 1516, subd. (b).)  The trial court's denial of Vondjidis's motion was based on its finding that the primary issues in the case involved "highly individualized inquiries."  We affirm the order.

## I.  Background

Vondjidis was an HP employee in its Athens, Greece office from 1974 to 1978. He purchased HP stock through HP's employee stock purchase plan.  HP used the office address for all of its employee-shareholders in its shareholder records unless the employee-shareholder asked HP to use a home address.  Therefore, HP used the address of its Athens, Greece office, rather than Vondjidis's home address, as the address for Vondjidis's shares in HP's shareholder records.  Vondjidis's home address was in HP's personnel records.  The Athens, Greece office closed in the early 1980's.  Since HP's shareholder records did not have Vondjidis's home address, he ceased to receive any shareholder mailings.  HP identified Vondjidis as a "lost" shareholder in 1980's.  In 1993 Vondjidis's shares in HP were transferred to the State under the UPL.

In 2003, Vondjidis filed this action against HP.  He alleged that he was one of a group of HP shareholders "who reside primarily in Europe and other countries" whose shares were transferred to the State by HP.  Vondjidis claimed that HP had failed to give notice to these shareholders prior to transfer despite the fact that HP had access to information that would have permitted it to do so.  His class allegations described the class as "all shareholders whose interests were damaged by defendants' improper

---

[2]      The length of the specified period has been steadily declining since 1968, when it was 20 years, and has been three years since 1990.  The period was changed from 20 years to seven years in 1975; it was reduced to five years in 1988 and to three years in 1990. (Stats. 1968, ch. 356, p. 745, § 16 [20 years]; Stats. 1975, ch. 578, p. 1179, § 1.5 [seven years]; Stats. 1988, ch. 286, § 6 [five years]; Stats. 1990, ch. 450, § 8 [three years].)

2

actions." He alleged that there were numerous issues "common to the members of the class which predominate over questions which may affect individual members . . . ." According to Vondjidis's complaint, these common issues included HP's failure to notify the class member shareholders, HP's knowledge of the locations of the class member shareholders, and the "extent of damages" suffered by the class member shareholders.

In February 2011, Vondjidis filed a motion for class certification seeking certification of a class consisting of two subclasses. One subclass was all persons whose shares were transferred by HP to the State prior to 1995 without UPL compliance. The other subclass was all persons whose shares were transferred by HP to the State after 1995 in violation of the UPL and without required notice.[3] In support of his motion, Vondjidis submitted declarations from his attorneys asserting, without elaboration, that "[c]ommon issues of fact and law predominate because defendant HP has specific and particular legal requirements to provide notice to all members of the class before transferring their stock investments to the State of California."[4] They claimed that Vondjidis was "typical of the class because he was entitled to notice," "did not receive this notice," and his shares were transferred to the State.

In his points and authorities, Vondjidis argued that HP's "conduct was uniformly directed to all shareholders whose stock was transferred in violation of the UPL and federal and state securities laws without notice." He asserted that "the injured shareholders' shares were transferred in [a] single block and sold on the same dates." HP's "standardized failure to follow the statutes and to notify any affected shareholders before or at the time of transfer of their shares to the Controller, assures uniformity in

---

[3] The notice requirement was added to the UPL in 1994. (Stats. 1993, ch. 692, § 4; § 1516, subd. (d).)

[4] As we have already noted, the notice requirement was not added to the statute until after Vondjidis's HP stock was transferred to the State. (See footnote 3.)

3

conduct toward the Class of shareholders." More specifically, Vondjidis claimed that the common fact was HP's "systematic failure to verify whether the shareholders of stock were truly 'lost' and 'unknown,' before transferring their shares to the Controller" and failing to notify these shareholders that their stock was going to be transferred to the State. He also claimed that it was a common fact that HP failed to execute the declaration required by section 1530, subdivision (c).[5] Vondjidis asserted that the common issue of law was whether HP had "unlawfully transferred their shares in HP without notice and without an effort to verify their status as 'lost' and 'unknown' within the meaning of the UPL."

HP opposed the motion and argued that Vondjidis had failed to establish that common issues predominated. It submitted evidence that in 1993 it had ensured that "[d]ue diligence" was performed before shares were transferred to the State. HP did not maintain an internal list of shareholders and their addresses. HP utilized a "transfer agent" to manage its shareholder information. Harris Trust (Harris) was HP's transfer agent in 1993, and Harris's duties included maintaining the names and addresses of HP's shareholders.[6] Harris would identify a shareholder as "lost" if three mailings went out to the shareholder's "latest address" and were returned "with unknown address on it." Harris prepared a list of "lost shareholders" and sent a copy of the list to HP. HP would identify those on the list who were "non U.S. employee[s]" and distribute "to each [foreign HP] division" a list of those on the list of "lost shareholders" who were from that division to determine if the division had "the latest last known address" for the HP employee-shareholder. When those divisions responded, the updated addresses would be

---

[5] Section 1530 mandates the filing of an annual report with the Controller's office by the entity that has transferred unclaimed property to the State. (§ 1530, subds. (b), (d).)

[6] Harris is sometimes referred to in the record as Harris Bank.

sent to Harris, and the shareholder records would be updated with the new addresses. If an HP shareholder on the list of "lost shareholders" had a social security number, Harris would obtain an updated address from a databank by "matching social security number[s]." After it had been verified that the only shareholders on the "lost" shareholders list were those for which HP and Harris could not locate a current address, Harris sent "final due diligence letters" to the last known addresses for the "lost" shareholders. It was only after all of these steps had been completed that HP's escheatment vendor, which in 1993 was State Street, would be instructed to transfer the shares of "lost shareholders" to the State.

The trial court held a hearing on Vondjidis's class certification motion and took the matter under submission. It thereafter issued an extensive written order finding that Vondjidis had failed to establish a community of interest because individual issues predominated. As to the proposed pre-1995 subclass, the court found that the primary issues would be (1) whether the shareholder claimed a dividend, communicated in writing with HP, or otherwise indicated an interest in dividends or shares during the three years prior to escheat, and (2) whether HP knew of the shareholder's location or knew that the address it was using for the shareholder was inaccurate. The post-1995 subclass would have the additional issue of whether the shareholder was given pre-transfer notice by HP. The court concluded that these issues involved "highly individualized inquiries." It rejected Vondjidis's claim that the common predominant issues were HP's due diligence, its use of agents to find lost shareholders, and its alleged failure to file section 1530 reports. The court reasoned that Vondjidis's proposed predominant issues were either irrelevant or would necessarily evaporate because HP had produced considerable evidence that it had utilized procedures that were aimed at locating lost shareholders.

After the court had taken the matter under submission, Vondjidis sent the court a letter advising the court that the State's unclaimed property Web site showed that a person with the same name as the trial court judge had held stock in an unrelated

5

corporation that had been transferred to the State many years ago. The letter did not ask the judge to recuse himself. The judge ruled that there was no request before him and that there was no basis for disqualifying him.

Vondjidis timely filed a notice of appeal from the order denying his motion for class certification.

## II.  Discussion

## A.  Standards For Class Certification

" 'The certification question is "essentially a procedural one that does not ask whether an action is legally or factually meritorious." ' " (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1023 (*Brinker*).)  "Presented with a class certification motion, a trial court must examine the plaintiff's theory of recovery, assess the nature of the legal and factual disputes likely to be presented, and decide whether individual or common issues predominate.  To the extent the propriety of certification depends upon disputed threshold legal or factual questions, a court may, and indeed must, resolve them." (*Brinker*, at p. 1025.)

"As the focus in a certification dispute is on what type of questions—common or individual—are likely to arise in the action, rather than on the merits of the case [citations], in determining whether there is substantial evidence to support a trial court's certification order, we consider whether the theory of recovery advanced by the proponents of certification is, as an analytical matter, likely to prove amenable to class treatment.  [Citations.]  'Reviewing courts consistently look to the allegations of the complaint and the declarations of attorneys representing the plaintiff class to resolve this question.' " (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 327.)

"The party advocating class treatment must demonstrate the existence of an ascertainable and sufficiently numerous class, a well-defined community of interest, and substantial benefits from certification that render proceeding as a class superior to the

6

alternatives. [Citations.] 'In turn, the "community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." ' " (*Brinker*, *supra*, 53 Cal.4th at p. 1021.)

"The 'ultimate question' the element of predominance presents is whether 'the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants.' . . . A court must examine the allegations of the complaint and supporting declarations [citation] and consider whether the legal and factual issues they present are such that their resolution in a single class proceeding would be both desirable and feasible. [fn. omitted] 'As a general rule if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages.' " (*Brinker*, *supra*, 53 Cal.4th at pp. 1021-1022.) "[The court] must determine whether the elements necessary to establish liability are susceptible of common proof or, if not, whether there are ways to manage effectively proof of any elements that may require individualized evidence." (*Brinker*, at p. 1024.)

## B. Standard of Review

" 'The decision [whether] to certify a class rests squarely within the discretion of the trial court, and we afford that decision great deference on appeal, reversing only for a manifest abuse of discretion: "Because trial courts are ideally situated to evaluate the efficiencies and practicalities of permitting group action, they are afforded great discretion in granting or denying certification." [Citation.] A certification order generally will not be disturbed unless (1) it is unsupported by substantial evidence, (2) it rests on improper criteria, or (3) it rests on erroneous legal assumptions. [Citations.]' [Citations.] Predominance is a factual question; accordingly, the trial court's finding that

7

common issues predominate generally is reviewed for substantial evidence. [Citation.] We must '[p]resum[e] in favor of the certification order . . . the existence of every fact the trial court could reasonably deduce from the record . . . .'" (*Brinker*, *supra*, 53 Cal.4th at p. 1022.)

"The appeal of an order denying class certification presents an exception to the general rule that a reviewing court will look to the trial court's result, not its rationale. If the trial court failed to follow the correct legal analysis when deciding whether to certify a class action, 'an appellate court is required to reverse an order denying class certification . . . , "even though there may be substantial evidence to support the court's order."' [Citations.] In other words, we review only the reasons given by the trial court for denial of class certification, and ignore any other grounds that might support denial." (*Bartold v. Glendale Federal Bank* (2000) 81 Cal.App.4th 816, 828-829; accord *Jaimez v. Daiohs USA, Inc.* (2010) 181 Cal.App.4th 1286, 1297-1298.)

### C. Vondjidis's Contentions

Vondjidis claims that the trial court made a legal error when it allegedly found "that HP followed the UPL." He claims that the trial court "applied improper criteria and erroneous assumptions" in identifying the primary issues and determining that individual issues predominate. And he suggests that it has already been determined by this court and the California Supreme Court that "the UPL does not apply" here.

Vondjidis mistakenly asserts that this court and the California Supreme Court previously ruled that HP is not entitled to immunity under the UPL. Vondjidis's prior appeal was a challenge to a summary judgment for HP that was premised on the UPL's immunity provisions (§§ 1321, 1532, subd. (d)). This court held that immunity under the UPL requires *compliance with the UPL*. There were triable issues of fact as to whether HP had complied with section 1516 because there was evidence that HP was aware of Vondjidis's home address at the time that he was found to be a "lost shareholder" and his

8

stock transferred to the State. The California Supreme Court took no action in Vondjidis's prior appeal other than to grant and thereafter dismiss review of this court's decision.[7]

Vondjidis nevertheless argues that "in [this court's] published decision [in the prior appeal], Dr. Vondjidis *showed that* HP failed to apply the proper criteria to his stock when it transferred the shares to the Controller." (Italics added.) He asserts that he "*already proved* [in the first appeal] that there was no 'general policy' in place to provide notice to him and presumably the other shareholders; in fact, just the opposite was true." (Italics added.) And he claims that the trial court "neglected to follow" our decision in the prior appeal. These assertions are founded on a false premise. This court's decision in Vondjidis's first appeal *resolved **no** factual issues*; this court merely found that UPL compliance was required to gain immunity and that there was a triable issue of fact as to whether HP had complied with section 1516 as to Vondjidis's stock. This case was remanded to the superior court, and, as yet, no factual issues have been adjudicated. The trial court, in ruling on Vondjidis's class certification motion, did not find that UPL compliance was not required or that there were no triable issues of fact as to HP's compliance with section 1516 in connection with Vondjidis's stock, so it did not fail to follow our prior decision.

Vondjidis maintains that the primary issue common to the class is whether HP complied with the "steps" required by the UPL before identifying a shareholder as lost. He maintains that HP's "conduct was uniformly directed at" the entire class. While there

---

[7] Vondjidis's prior appeal resulted in a published opinion by this court, but that opinion ceased to be published after the decision was granted review by the California Supreme Court on a grant and hold basis. After the lead case, *Azure Limited v. I-Flow Corp.* (2009) 46 Cal.4th 1323, was decided, the California Supreme Court dismissed and remanded Vondjidis's prior appeal. Hence, Vondjidis's prior appeal was not decided by the California Supreme Court, and the opinion of this court does not remain published.

9

was evidence that HP had mistakenly designated Vondjidis as lost when it knew of his location, Vondjidis leaps from this evidence of a single mistake to the conclusion that there was a classwide HP practice of declaring shareholders lost despite HP's awareness of their location.

Vondjidis bore the burden on his class certification motion of supporting his motion with some basis for a belief that there was a *classwide practice*, rather than an individual error, so as to demonstrate that this was a common issue rather than an individual issue. Instead of shouldering this burden, he merely points to the *absence* of evidence. Vondjidis produced absolutely *no* evidence in support of his motion suggesting that HP had a classwide practice of misidentifying shareholders as lost despite its knowledge of their locations. His complaint simply alleged that HP knew the locations of class members, and his attorneys' declarations did nothing more than assert that HP had a classwide duty to comply with the UPL. These vague assertions did little to demonstrate that there actually was a common issue. We also reject Vondjidis's reliance on the simple fact that the *transfers* of HP stock were done in large batches for groups of lost shareholders on a yearly basis, as required by the UPL, since the issues involved in this case concerned HP's *pre-transfer* compliance with the UPL.

HP's opposition, on the other hand, provided a wealth of evidence that it had engaged in a process involving itself, its transfer agent, and its escheatment vendor, designed to comply with section 1516 by locating any shareholders believed to be lost before their shares were transferred to the State. While HP was unable to explain how it had misidentified Vondjidis as lost despite its knowledge of his location, HP's evidence rebutted Vondjidis's unsupported speculation that HP's actions regarding Vondjidis's stock were typical of HP's actions regarding other shareholders identified as lost. Indeed, HP produced evidence that it had a system in place that was specifically aimed at checking whether HP's personnel system contained an address for an employee-

10

shareholder who was thought to be lost due to the fact that HP had used an HP office address as the address for the employee-shareholder's stock.

Throughout his brief, Vondjidis suggests that the trial court was required to grant his motion unless *HP established* that "it complied with the UPL in every respect."[8] Not so. HP was not the moving party, so it bore no burden. (*Brinker*, *supra*, 53 Cal.4th at p. 1022 [burden is on party seeking class certification].) Vondjidis was the party moving for class certification, and he bore the burden of demonstrating that common issues predominated. Furthermore, the resolution of the class certification motion did not require the trial court to determine whether HP did or did not comply with the UPL. The trial court was required to determine only whether common issues predominated.

Vondjidis contends that the common issue was whether HP made "an effort to verify" that the shareholders were actually "lost" before transferring their stock to the State. Vondjidis failed to make any showing that this was a common issue rather than an individualized one. HP's evidence showed that it had set up procedures aimed at avoiding misclassifying shareholders as lost, and this evidence suggested that HP's misidentification of Vondjidis as lost was not due to a classwide practice but to an individualized error. Again, Vondjidis simply leaps from HP's misidentification of him as lost to the conclusion that it must have made such mistakes as to a large class of lost shareholders. He brought in no evidence to support his assumption, and HP's evidence strongly suggested otherwise. Vondjidis asserts that he "already proved" in the prior appeal that HP did not have any procedures in place designed to notify lost shareholders

---

[8] For instance, Vondjidis takes issue with HP's failure to produce copies of its section 1530 reports. HP had no burden to meet on this motion. Nor is it clear how these reports would have demonstrated that HP was aware of the locations of an entire class of shareholders designated as lost. He also complains that HP did not produce evidence of shareholder communications during the three-year "dormancy" period. HP had no such burden.

11

prior to the transfer of shares to the State. As we have already noted, the prior appeal did not resolve any factual issues. Vondjidis never "proved" in the prior appeal that HP lacked appropriate procedures for notifying lost shareholders nor did he do so in support of his class certification motion. He asserted as much but presented no evidence. As the trial court noted, "HP did not have to prove that individual notice was accomplished . . . . The issue was whether Plaintiff's case was subject to common proof . . . ." HP's evidence that it had an appropriate procedure in place for avoiding misidentification of shareholders as lost tended to rebut the commonality of issues concerning HP's compliance with section 1516.

Vondjidis contends that the trial court improperly "Held" that HP was permitted to have a policy of using office addresses for its employee-shareholders. (Boldface omitted.) While the trial court discussed in its order HP's policy of using office addresses for employee-shareholders, it did not grant HP permission to do so, which was not an issue before the court. The court merely acknowledged that HP had also produced evidence that it had a practice of checking its personnel systems for another address when an employee-shareholder was thought to possibly be lost. This analysis was relevant to the commonality of the issues, not a resolution of the propriety of HP's practice.

Vondjidis claims that the trial court "Erred When It Refused To Consider The Potential Conflict." (Boldface omitted.) Vondjidis's post-submission letter did not ask the judge to disqualify himself. The judge did "Consider" the letter and concluded that there was no basis for a finding that he was disqualified in this matter because the information in the letter did not indicate that the judge had a financial interest in the subject matter of this proceeding. (Boldface omitted.) (Code Civ. Proc., § 170.1, subd. (a)(3)(A).) On appeal, Vondjidis does not actually claim that the trial court judge was required to disqualify himself. We reject his contention as lacking any foundation.

The trial court's findings were supported by the evidence, and those findings in turn supported the court's conclusion that individual issues predominate in this case. The

12

court did not utilize improper criteria or make any legal errors in reaching this conclusion.  Accordingly, the trial court did not abuse its discretion in denying Vondjidis's motion for class certification.

## III.  Disposition

The order is affirmed.

_____
Mihara, J.

WE CONCUR:

_____
Premo, Acting P. J.

_____
Grover, J.

13