[No. S164884. July 16, 2009.]

AZURE LIMITED, Plaintiff and Appellant, v.
I-FLOW CORPORATION, Defendant and Respondent.

**COUNSEL**

Shapiro, Rodarte & Forman, Carl W. Shapiro, Teresa Z. Youhanaie, Leora D. Freedman and Thomas W. Foote for Plaintiff and Appellant.

Law Office of William W. Palmer and William W. Palmer for Bank of Stockton, Alexander Vondjidis, Agnes W. Suever, Madonna Suever, Steve Tucker, Richard W. Seitzinger, Jo-Ann S. Seitzinger, Seitzinger Family Trust, Johnstone Whitley, Lynn Keith, Richard Valdez, Tony Lee, Chris Lusby Taylor, Nancy A. Pepple-Gonsalves, Gary Kesselman, Susan Swinton, Dawn E. Struck, William J. Palmer, Leslie Saul-Gershenz, Carla Ruff and Emilio G. Milian as Amici Curiae on behalf of Plaintiff and Appellant.

Gibson, Dunn & Crutcher, Jeffrey H. Reeves, J. Scot Kennedy, John N. Carter and Julian W. Poon for Defendant and Respondent.

Remcho, Johansen & Purcell, Robin B. Johansen, James C. Harrison and Margaret R. Prinzing for California State Controller John Chiang as Amicus Curiae.

## OPINION

**CHIN, J.**—The Unclaimed Property Law (UPL) (Code Civ. Proc., § 1500 et seq.)[1] requires corporations to deliver to the State Controller (the Contoller) a duplicate certificate of unclaimed corporate stock in specified circumstances. Section 1532, subdivision (d), provides that any "holder" of that unclaimed stock "shall be relieved from all liability of every kind to any person . . . for any losses or damages resulting to that person by the issuance and delivery to the Controller of the duplicate certificate . . . ." We granted review to determine the nature and scope of this immunity. We conclude that a corporation is entitled to section 1532's immunity only if it complies with other provisions of the UPL. We affirm the judgment of the Court of Appeal, which reached a similar conclusion, and disapprove *Harris v. Verizon Communications* (2006) 141 Cal.App.4th 573 [46 Cal.Rptr.3d 185] (*Verizon*), which reached a contrary conclusion.

### I. PROCEDURAL HISTORY

Plaintiff Azure Limited (Azure) sued defendant I-Flow Corporation (I-Flow) for breach of fiduciary duty. The complaint alleged the following: Azure acquired nearly 95,000 shares of I-Flow stock in 1990 and exchanged those shares in 1993 for nearly 19,000 shares in a reverse stock split. In 2003, Azure learned that I-Flow had transferred these shares to the state as escheated property. In October 2003, Azure requested the state to return its stock. The state responded that Azure might not be able to receive the stock itself, and that it might instead receive proceeds from the sale of the stock. In November 2004, when I-Flow's common stock was selling for $17.72 per share, Azure learned that the state had sold the stock in June 2003 for $4.62 per share.

The complaint alleged that I-Flow breached its fiduciary duty to Azure by treating Azure's stock as abandoned property even though it knew Azure's location at all relevant times, by transferring the stock to the state without

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

legal justification, and by failing to give Azure notice of the transfer. It sought to recover as damages the difference between the proceeds from the June 2003 sale and the value of the stock as of November 2004.

The superior court granted judgment on the pleadings in favor of I-Flow, finding that section 1532 immunized I-Flow's actions, and entered judgment accordingly. Azure appealed. The Court of Appeal reversed the judgment. It held that the "UPL immunizes corporations from civil liability only when they transfer escheated shares to the state in compliance with the provisions of the UPL. The UPL does not immunize corporations like [I-Flow] who allegedly transfer nonescheated shares to the state without giving the required notice." It remanded the matter to the trial court with directions to vacate its order granting judgment on the pleadings and instead to deny the motion.

We granted review to resolve the conflict between the Court of Appeal opinion in this case and *Verizon, supra,* 141 Cal.App.4th 573.

## II. Discussion

### A. *The Statutory Scheme*

■ "The UPL establishes the conditions under which certain unclaimed personal property escheats to the state. The UPL is not a permanent or 'true' escheat statute. Instead, it gives the state custody and use of unclaimed property until such time as the owner claims it. Its dual objectives are 'to protect unknown owners by locating them and restoring their property to them and to give the state rather than the holders of unclaimed property the benefit of the use of it, most of which experience shows will never be claimed.' " (*Harris v. Westly* (2004) 116 Cal.App.4th 214, 219 [10 Cal.Rptr.3d 343], fn. omitted, quoting *Douglas Aircraft Co. v. Cranston* (1962) 58 Cal.2d 462, 463 [24 Cal.Rptr. 851, 374 P.2d 819].)

■ This case involves shares of stock. Section 1516 governs intangible interests in a business association, such as corporate stock. Stock will escheat to the state if (1) its owner has neither claimed a dividend nor corresponded in writing or otherwise indicated an interest in the stock for over three years, and (2) the corporation does not know the owner's location at the end of the three-year period. (§ 1516, subd. (b).) With respect to this stock, the statute provides that the corporation "shall be deemed the holder." (*Ibid.*)[2] A

---

[2] In its entirety, section 1516, subdivision (b), provides: "Subject to Section 1510, any intangible interest in a business association, as evidenced by the stock records or membership records of the association, escheats to this state if (1) the interest in the association is owned by a person who for more than three years has neither claimed a dividend or other sum referred to in subdivision (a) nor corresponded in writing with the association or otherwise indicated an

corporation holding stock that has escheated under this provision must include the stock in a report filed yearly with the Controller. (§ 1530.) Before it can report any stock that "may escheat," the corporation must make reasonable efforts to notify the stock's owner of the impending escheat. (§ 1516, subd. (d).) The corporation must give this notice between six and 12 months before the stock becomes reportable to the Controller. (*Ibid.*) The notice must include a form by which the owner may confirm its current address. "If that form is filled out, signed by the owner, and returned to the holder, it shall be deemed that the business association knows the location of the owner." (*Ibid.*) Otherwise, the corporation must include the stock in its yearly report to the Controller. (§ 1530.)

 Section 1532 is critical to the issue before us. Subdivision (a) of that section requires a corporation that has filed the report under section 1530 to deliver to the Controller "all escheated property specified in the report" between seven months and seven months and 15 days after the report is due. Subdivision (b) of that section qualifies this requirement by providing that if, in the interim between the report and delivery, the owner of the stock establishes its right to the property "to the satisfaction of the holder" or it otherwise appears that the stock is not subject to escheat, the corporation must not deliver the property to the Controller; instead, the corporation must file a different report "containing information pertaining to the property not subject to escheat." (§ 1532, subd. (b).)

Subdivision (d) of section 1532 concerns what to do with escheated stock. The first sentence of that subdivision provides: "The holder of any interest under subdivision (b) of Section 1516 shall deliver a duplicate certificate to the Controller or shall register the securities in uncertificated form in the name of the Controller." The second (and final) sentence of that subdivision presents the precise issue before us: "*Upon delivering a duplicate certificate* or providing evidence of registration of the securities in uncertificated form *to the Controller, the holder,* any transfer agent, registrar, or other person acting for or on behalf of the holder in executing or delivering the duplicate certificate or registering the uncertificated securities, *shall be relieved from all liability of every kind to any person* including, but not limited to, any person acquiring the original certificate or the duplicate of the certificate issued to the Controller *for any losses or damages resulting to that person by the issuance and delivery to the Controller of the duplicate certificate* or the registration of the uncertificated securities to the Controller." (§ 1532, subd. (d), italics added.)

interest as evidenced by a memorandum or other record on file with the association, and (2) the association does not know the location of the owner at the end of the three-year period. With respect to the interest, the business association shall be deemed the holder."

 The Controller assumes custody of escheated property it has received and, if the property has commercial value, eventually sells it. (§§ 1560, subd. (a), 1563.) "Securities listed on an established stock exchange shall be sold at the prevailing prices on that exchange." (§ 1563, subd. (b).) A person who claims an interest in the property "may file a claim to the property or to the net proceeds from its sale." (§ 1540, subd. (a).) "If the Controller grants the claim, the Controller returns the property or the proceeds from its sale to the claimant . . . ." (*Fong v. Westly* (2004) 117 Cal.App.4th 841, 845 [12 Cal.Rptr.3d 76].) Additionally, "Any holder who has delivered personal property, including a certificate of any interest in a business association, to the State Controller pursuant to this chapter may reclaim such personal property if still in the possession of the State Controller without payment of any fee or other charges upon filing proof that the owner thereof has claimed such personal property from such holder." (§ 1560, subd. (d).) Although subdivision (c) of section 1540 formerly provided for the payment of interest (*Fong v. Westly, supra*, at p. 845), in 2003, that subdivision was amended to provide, as it does today, "No interest shall be payable on any claim paid under this chapter." (See Stats. 2003, ch. 228, § 8.)

### B. *Interpretation of Section 1532, Subdivision (d)*

Azure alleges that I-Flow should not have delivered its stock to the Controller for two reasons: (1) The stock was not subject to escheat under section 1516, subdivision (b), because I-Flow knew Azure's location at all relevant times; and (2) I-Flow did not provide the notice that section 1516, subdivision (d), requires. It also alleges that, even though it received the proceeds from the Controller's sale of the stock, it was damaged because the Controller had previously sold the stock at a price much lower than its value when Azure reclaimed the property. I-Flow denies these allegations but recognizes that they have not yet been litigated. When reviewing a judgment on the pleadings, we must accept as true the material facts alleged in the complaint. (*Foundation for Taxpayer & Consumer Rights v. Nextel Communications, Inc.* (2006) 143 Cal.App.4th 131, 135 [48 Cal.Rptr.3d 836].) Thus, the legal issue before us is whether section 1532 immunizes I-Flow from liability even if we assume that, when it delivered the stock to the Controller, it knew Azure's address and failed to provide notice under section 1516, subdivision (d).

 The court in *Verizon, supra*, 141 Cal.App.4th 573, interpreted section 1532 as providing immunity to a corporation that issues and delivers to the Controller a duplicate certificate, whether or not the delivery complies with the UPL's requirements. Justice Mallano dissented, arguing that "the UPL's immunity provisions cannot reasonably be interpreted to apply to the circumstances here, where plaintiffs allege that [the defendant] breached a fiduciary

duty to give them a fair opportunity to prevent the operation of the UPL in the first instance." (*Verizon, supra,* at p. 580 (dis. opn. of Mallano, J.).) The Court of Appeal here disagreed with the *Verizon* majority. It concluded that the "UPL does not immunize corporations like defendant who allegedly transfer nonescheated shares to the state without giving the required notice." We agree with this conclusion.

I-Flow argues and the *Verizon* court found that "the immunity conferred by the UPL is absolute . . . ." (*Verizon, supra,* 141 Cal.App.4th at p. 577.) In one sense, this may be so. But the question is *who* receives this immunity. Is it *any* corporation that transfers a duplicate certificate to the Controller, or only one that does so in compliance with the UPL?

■ Section 1532, subdivision (d), states that "[t]he holder of any interest under subdivision (b) of Section 1516" must take certain action, and then it immunizes *that* holder for that action. We must determine when a corporation becomes a "holder" entitled to immunity under this provision. Escheated stock differs from other escheated property in a crucial respect. Usually, whoever delivers escheated property to the Controller possesses that property. But the stockholder, not the corporation, normally possesses the certificate representing an intangible interest in the corporation. Thus, section 1532, subdivision (d), requires the corporation to deliver a *duplicate certificate* of escheated stock to the Controller. Section 1516, subdivision (b), states that, with respect to *escheated stock,* the corporation "shall be deemed the holder." This is so despite the fact the corporation might never actually possess the original certificate of escheated stock. What this means is that, although the corporation does not possess the original certificate, the UPL deems the corporation to be the "holder" of the interest when the criteria of abandoned property are satisfied. Until those criteria are satisfied, the corporation is not a "holder," and therefore is not entitled to the immunity afforded a "holder" under section 1532. Thus, section 1532, subdivision (d), immunizes only the holder of stock that is *actually* subject to escheat under section 1516, subdivision (b).

■ Section 1501, which defines various terms used in the UPL, is consistent with this conclusion. As relevant, section 1501 provides: "As used in [the UPL], *unless the context otherwise requires*: [¶] . . . [¶] (e) 'Holder' means any person in possession of property subject to this chapter belonging to another . . . ." (Italics added.) I-Flow argues that the UPL does not always refer to property that is *actually* subject to escheat but occasionally contains broader references. For example, section 1516, subdivision (d), imposes notice requirements on corporations possessing property that "may escheat pursuant to subdivision (b) . . . ." Thus, I-Flow argues, a "holder" includes

"corporations in possession of escheated and potentially escheatable property." We disagree. Even assuming the definition in section 1501, subdivision (e), by itself, would support a broad interpretation of "holder" under section 1532, subdivision (d), "the context otherwise requires" a narrower interpretation (§ 1501). As we have explained, in context, the "holder" that section 1532, subdivision (d), immunizes is "[t]he holder of any interest under subdivision (b) of Section 1516 . . . ." Section 1516, subdivision (b), deems the corporation to be the holder only of stock actually subject to escheat.[3]

■ This interpretation means that only a corporation delivering a duplicate certificate of stock actually subject to escheat under section 1516, subdivision (b), receives section 1532, subdivision (d)'s immunity. If the corporation delivers to the Controller stock that does not meet the requirements of section 1516, subdivision (b), it is not entitled to the statutory immunity. We believe the same is also true of a corporation that delivers the stock without complying with the notice requirements of section 1516, subdivision (d). The obvious purpose of such notice is to prevent the

---

[3] The dissent asserts that "[n]owhere in the statutory scheme does the Legislature declare that a person does not become a holder of stock until the criteria of abandoned property is satisfied . . . ." (Dis. opn., *post*, at p. 1337.) On the contrary, as we have explained, section 1532, subdivision (d), the immunity provision at issue here, grants the immunity to the "holder of any interest under subdivision (b) of Section 1516." In turn, the last sentence of section 1516, subdivision (b), specifically "deem[s]" the corporation to be the holder "[w]ith respect to the interest," which can only refer to the "interest" defined in the first sentence of that subdivision, that is, an "interest in a business association" that has met the criteria for escheat. (See fn. 2 for the entire text of § 1516, subd. (b).)

Section 1516, subdivision (d), also states that if, after the corporation provides the required notice, the "form is filled out, signed by the owner, and returned to the *holder*, it shall be deemed that the business association knows the location of the owner." (Italics added.) Contrary to the view of the dissent, this use of the word "holder" is consistent with our interpretation. A corporation that has provided the required notice regarding stock subject to escheat under section 1516, subdivision (b), is considered the holder of the stock. Section 1532, subdivision (b), another statute the dissent cites, is similar in this regard. Moreover, even if the word "holder" is used slightly differently in some other contexts, such differences cannot negate the specific language of sections 1516, subdivision (b), and 1532, subdivision (d), the precise statutes at issue here.

The dissent also cites the first sentence of section 1560, subdivision (d) (quoted on p. 1330, *ante*). (Dis. opn., *post*, at pp. 1338–1339.) That sentence has nothing to do with the issue before us. We agree with the dissent that no reason exists why the Legislature would want to bar a corporation that had mistakenly delivered stock from correcting its mistake and returning the property to its rightful owner. But the Legislature has not done so. Section 1560, subdivision (d), merely provides that if the property's owner is later found, the holder that delivered the property to the Controller may reclaim it (if still in the Controller's possession) "without payment of any fee or other charges." Prohibiting the Controller from charging a fee is logical given that the corporation was required to deliver the property in the first instance. Whether the Controller could charge a fee to a corporation that should not have delivered the property is a question far beyond the scope of review in this case.

unauthorized delivery of stock to the Controller. Although section 1532, subdivision (d), does not specifically refer to the notice requirement of section 1516, subdivision (d), the UPL as a whole makes clear that the corporation must not actually deliver stock to the Controller without first complying with the notice requirements. This means the stock is not actually escheatable until the notice requirements are satisfied. Indeed, the notice provision would be meaningless if corporations could ignore it and still receive immunity for their actions.

I-Flow argues that section 1532's immunity cannot be conditioned on satisfying the notice requirements of section 1516, subdivision (d), because the Legislature did not add those notice requirements until 1993 and, when it did so, it did not change section 1532's already existing immunity provision to require compliance with the new notice requirements as a condition of immunity. (See Stats. 1993, ch. 692, § 4, p. 3991.) I-Flow argues that "[i]f the Legislature intended to make compliance with section 1516, subdivision (d) a condition of immunity, it would have done so explicitly." But we think the fact that section 1532's immunity provision predated section 1516, subdivision (d)'s notice requirement explains why the former does not reference the latter. This circumstance does not negate the fact that section 1532, subdivision (d), only governs the "holder of any interest under" section 1516, subdivision (b), i.e., property actually subject to escheat. As Azure argues, it is unlikely the Legislature intended to immunize a delivery that violated section 1516's notice requirements.

I-Flow argues, and *Verizon* concluded, that interpreting section 1532's immunity as conditioned on compliance with the UPL's other requirements "would render the immunity meaningless because immunity comes into play when, and *only* when, the defendant is charged with wrongdoing." (*Verizon, supra,* 141 Cal.App.4th at p. 578.) If a corporation acts in compliance with, and under compulsion of, the UPL, the argument goes, there could be no liability even absent section 1532's immunity. Thus, to be meaningful, and not mere surplusage, the immunity must be interpreted as covering wrongdoing, that is, covering actions where liability might otherwise exist. The argument is facially appealing, but we find it unpersuasive. First, it proves too much. As we explain below, the UPL contains other immunity provisions that even I-Flow recognizes are conditioned on compliance with the UPL. (§§ 1560, 1561.) If conditioning section 1532's immunity on compliance with the UPL would render it meaningless surplusage, then the same would seem to be true of the immunity of sections 1560 and 1561. In fact, good reason exists for the Legislature to provide for this immunity expressly even if it is conditioned on compliance with the UPL.

As noted above, because the corporation does not possess the escheated stock, it cannot, under ordinary circumstances, transfer the stock without the

participation of the owner. To deal with the absence of possession, the Legislature has directed the holders of escheated stock to deliver a duplicate certificate to the Controller or register the security in the Controller's name. (§ 1532, subd. (d).) As amicus curiae Controller stated at oral argument, issuing a duplicate stock certificate would be "a very unorthodox act." This procedure is inconsistent with statutes governing the transfer of certificated and uncertificated securities. (See Cal. U. Com. Code, § 8301 et seq.) Absent section 1532's immunity provision, a corporation might be faced with conflicting demands to recognize a share of stock, and with potential liability to two owners of the same share. (See Cal. U. Com. Code, §§ 8401, 8405, subd. (b).) That section 1532 is concerned with this particular potential liability is reflected in the provision's language and context. The statute refers to liability "resulting . . . by the issuance and delivery to the Controller of the duplicate certificate or the registration of the uncertificated securities to the Controller" (§ 1532, subd. (d)), rather than more generally to liability resulting from the transfer of intangible property to the Controller. In addition, the statute's specific reference to claims by "any person acquiring the original certificate or the duplicate of the certificate issued to the Controller" (*ibid.*) focuses on liabilities related to the existence of both certificates. It is not meaningless for the Legislature to assure corporations issuing duplicate stock certificates in compliance with the UPL that they will incur no liability for doing so. The fact the Legislature provided such assurance expressly does not mean the grant of immunity extends to actions that do *not* comply with the UPL.

Certainly, if section 1532 had not *expressly* immunized the delivery of duplicate stock certificates in compliance with the UPL, it is likely the courts would have read the UPL as *implying* such immunity. But this circumstance does not make the express grant of immunity meaningless or permit the courts to interpret the immunity as broader than the language otherwise permits. Sometimes the Legislature may choose to state expressly what would otherwise be implied to make the statute's meaning entirely clear, avoid unnecessary litigation, and reassure entities that must comply with the statute. Moreover, as the Court of Appeal explained in this case, "Corporations that comply with the UPL are immunized from claims that the corporations breached contractual or fiduciary duties over and above the UPL—they are immunized from claims that they should have done *more* than the UPL requires. The value of this immunity is not lessened by maintaining the liability of corporations that do *less* than the UPL demands."

I-Flow cites other immunity provisions in the UPL in support of its position. Section 1560, subdivision (a), gives immunity to any person who "pays or delivers escheated property to the State Controller under this chapter . . . ." Section 1561, subdivision (a), requires the Controller to defend and indemnify a holder who "pays or delivers escheated property to the State

Controller in accordance with this chapter . . . ." I-Flow agrees that these grants of immunity are limited to actions that comply with the UPL and do not extend to mistaken deliveries. Indeed, the Law Revision Commission comment to section 1561 states that section 1561, subdivision (a), "like Section 1560, applies only in cases in which *escheated* property has been paid or delivered to the Controller. If the holder mistakenly delivers to the Controller property that has not escheated, this section does not require the Controller to defend the claim of the owner or indemnify the holder." (Cal. Law Revision Com. com., 20 West's Ann. Code Civ. Proc. (2007 ed.) foll. § 1561, pp. 308–309.)

I-Flow argues that the immunity provisions of sections 1560 and 1561 support its position in two respects. First, it argues that because these statutes immunize the delivery of property in compliance with the UPL, section 1532 must be interpreted as providing absolute immunity to prevent it from simply duplicating sections 1560 and 1561. Second, it argues that these statutes show "that the Legislature knew how to condition immunity on full compliance with certain conditions when it wanted to do so." Neither argument supports I-Flow's position. Section 1532 does not duplicate sections 1560 and 1561. Sections 1560 and 1561 govern the delivery of escheated property. Section 1532 governs the issuance and delivery of *duplicate stock certificates*. These are two different actions. The Legislature could logically decide to have separate immunity provisions for these varying actions. We also agree that the Legislature knows how to condition immunity on compliance with the UPL, but it did so regarding section 1532 by giving immunity only to holders of property actually subject to escheat under section 1516, subdivision (b).

Indeed, the circumstance that the immunity of sections 1560 and 1561 is conditioned on compliance with the UPL supports a similar interpretation of section 1532. We see no reason the Legislature would condition immunity for delivering property on the property's being actually subject to escheat (§§ 1560 and 1561) but would grant absolute immunity for issuing and delivering a duplicate stock certificate even if the stock is not subject to escheat (§ 1532). Instead, the Legislature likely intended parallel grants of immunity.

I-Flow argues, and the *Verizon* court concluded, that "the Legislature's adoption of a rule of absolute immunity is consistent with the purpose of the UPL, which is to give the state rather than the holders of unclaimed property the benefit of its use. [Citation.] Without this protection, holders of unclaimed property concerned about lawsuits . . . would likely err on the side of retaining rather than delivering unclaimed property to the Controller, thereby depriving the state of the benefit of its use." (*Verizon, supra,* 141 Cal.App.4th at p. 579.) On the contrary, conditioning immunity on compliance with the UPL furthers its purposes—which are to protect unknown owners and to give

the state the benefit of the use of *unclaimed* property. (See *Harris v. Westly*, *supra*, 116 Cal.App.4th at p. 219.) Requiring compliance with the UPL—i.e., ensuring that the owners are in fact unknown and the property is in fact unclaimed—furthers the purpose of protecting unknown owners. Moreover, the state has no legitimate interest in receiving and using property that is not unclaimed. As the Controller points out in an amicus curiae brief supporting Azure on this issue, the state has no way of determining whether stock delivered to it is in fact subject to escheat under section 1516, subdivision (b). As the Controller further states, "Only the corporation has access to the information needed to know whether property meets the UPL's conditions for escheat." Thus, it makes sense for the Legislature to immunize a corporation's delivery of unclaimed stock, but to condition the immunity on the stock's being actually subject to escheat.

I-Flow also argues that recent legislation shows the Legislature impliedly ratified the interpretation of section 1532 given in *Verizon, supra,* 141 Cal.App.4th 573. As the Court of Appeal explained, "In 2007, after *Verizon* was decided, the Legislature amended subdivision (a) of section 1532, added new subdivisions, and redesignated subdivision (b)—the immunity provision—as subdivision (d) without change. (Stats. 2007, ch. 179, § 4.)" We agree with the Court of Appeal that this change does not ineluctably indicate legislative agreement with *Verizon*'s interpretation: "We do not see how a nonsubstantive renumbering of the subdivision containing the immunity provision constitutes a legislative endorsement of *Verizon*, or anything other than an attempt to make room for new subdivisions." Under these circumstances we find little significance in the Legislature's failure to amend the immunity provision when it amended the UPL in other respects. (See *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.* (1999) 20 Cal.4th 163, 178 [83 Cal.Rptr.2d 548, 973 P.2d 527].)

█ For all of these reasons, we conclude that section 1532, subdivision (d), immunizes only corporations that deliver stock in compliance with the UPL. We disapprove *Harris v. Verizon Communications, supra,* 141 Cal.App.4th 573.

### III. CONCLUSION

We affirm the judgment of the Court of Appeal.

George, C. J., Baxter, J., Werdegar, J., Corrigan, J., and Perren, J.,* concurred.

---

*Associate Justice of the Court of Appeal, Second Appellate District, Division Six, assigned by the Chief Justice pursuant to article VI, section b of the California Constitution.

**MORENO, J., Dissenting.**—Code of Civil Procedure section 1516, subdivision (b),[1] which is part of the Unclaimed Property Law (UPL; § 1500 et seq.), provides that "any intangible interest in a business association, as evidenced by the stock records or membership records of the association, escheats to this state if (1) the interest in the association is owned by a person who for more than three years has neither claimed a dividend or other sum . . . nor corresponded in writing with the association . . . and (2) the association does not know the location of the owner at the end of the three-year period. With respect to the interest, the business association shall be deemed the holder."

Section 1532, subdivision (d), requires the "holder of any interest under subdivision (b) of Section 1516" to "deliver a duplicate certificate to the Controller." The statute provides a broadly worded immunity to the holder: "Upon delivering a duplicate certificate . . . the holder . . . shall be relieved from all liability of every kind to any person . . . for any losses or damages resulting to that person by the issuance and delivery to the Controller of the duplicate certificate . . . ." (§ 1532, subd. (d).)

The majority holds that this immunity is quite limited and applies only if the holder has complied with all of the provisions of the UPL. I disagree. By its terms, the immunity applies once the holder delivers a copy of the duplicate certificate. The apparent purpose of the immunity is to protect the holder from claims that in doing so, the holder has not complied with the UPL. In most instances, someone who has complied with all aspects of the UPL is in no need of immunity. The majority's holding largely defeats the apparent purpose of the Legislature's broad grant of immunity.

The majority reaches its conclusion by relying upon a limited definition of the term "holder" as used in the UPL. According to the majority, a person or entity that delivers a duplicate stock certificate to the Controller is not a "holder" within the meaning of the UPL until "the criteria of abandoned property is satisfied." (Maj. opn., *ante*, at p. 1331.) The majority concludes: "Thus, section 1532, subdivision (d), immunizes only the holder of stock that is *actually* subject to escheat under section 1516, subdivision (b)." (*Ibid.*)

Nowhere in the statutory scheme does the Legislature declare that a person does not become a holder of stock until the criteria of abandoned property is satisfied or that only holders of stock that is actually subject to escheat are entitled to the broad immunity provided in section 1532, subdivision (d). Rather, the term "holder" is defined broadly: " 'Holder' means any person in possession of property subject to this chapter . . . ." (§ 1501, subd. (e).) The

---

[1] All further statutory references are to the Code of Civil Procedure.

term "holder" appears throughout the UPL and often is used to refer to a person in possession of property that has not actually escheated.

For example, section 1513.5, subdivision (a) requires a "holder" that is a "banking or financial organization" that "has in its records an address for the apparent owner" to notify the apparent owner by mail that its property "will escheat." Thus, the term "holder" includes a person that has not yet satisfied all of the requirements of the UPL and possesses property that may escheat, but is not yet actually subject to escheat. (See also § 1520, subd. (b).)

Section 1516, subdivision (d) similarly requires a business association to "make reasonable efforts to notify the owner" that its interest may escheat to the state by mailing a form to confirm the owner's current address. "If that form is filled out, signed by the owner, and returned to the holder, it shall be deemed that the business association knows the location of the owner." (*Ibid.*) The statute thus uses the term "holder" to refer to someone who possesses property that is not actually subject to escheat.

Limiting the definition of holder to apply only to one in possession of property that is *actually* subject to escheat is inconsistent with the language of section 1561, subdivision (b), which states: "If any holder, because of mistake of law or fact, pays or delivers any property to the State Controller that has not escheated under this chapter and thereafter claims the property from the State Controller, the State Controller shall, if he has not disposed of the property in accordance with this chapter, refund or redeliver the property to the holder without deduction for any fee or other charge." Thus, a person who mistakenly delivers to the Controller property that has not escheated is still referred to as a "holder" by the UPL.

The same is true of section 1560, subdivision (d), which provides in part: "Any holder who has delivered personal property, including a certificate of any interest in a business association, to the State Controller pursuant to this chapter may reclaim such personal property if still in the possession of the State Controller without payment of any fee or other charges upon filing proof that the owner thereof has claimed such personal property from such holder." This provision permits a "holder" that has delivered apparently escheated stock to the Controller to reclaim the stock when the owner of the stock later appears. Limiting the definition of the term "holder" to apply only to one in possession of stock that has actually escheated would mean that the Controller would be permitted to return, without a fee, only stock that actually had escheated, but would not be authorized to return stock that had been wrongly delivered and had not escheated. I can imagine no reason why the Legislature would want to bar a holder that had mistakenly delivered stock to the state, and then discovered its error, to correct its mistake and return the stock to its rightful owner.

Another example is section 1532, subdivision (b), which states that if a holder has included apparently escheated property in the required report, and the owner thereafter "establishes his or her right to receive any property specified in the report to the satisfaction of the holder before that property has been delivered to the Controller, or it appears that, for any other reason, the property may not be subject to escheat under this chapter, the holder shall not pay or deliver the property to the Controller . . . ." This statute thus also uses the term "holder" to refer to someone who possesses property that is not actually subject to escheat.

The Legislature has not used the term "holder" in the limited sense described by the majority. Rather, it has used the term broadly to refer to one who holds property that may be subject to escheat. I conclude, therefore, that the Legislature intended the immunity provided in section 1532, subdivision (d), to apply broadly to protect those that deliver to the Controller property that may be subject to escheat.