Filed 3/10/16  Certified for Publication 4/11/16 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| VANACORE AND ASSOCIATES, INC., | C076017 |
| Plaintiff and Appellant, | (Super. Ct. No. PC20130167) |
| v. | |
| KENNETH ROSENFELD, | |
| Defendant and Respondent. | |

This case arises under California's Unclaimed Property Law (Unclaimed Property Law or UPL).  Plaintiff Vanacore and Associates, Inc., dba Vanacore International (Vanacore), a private investigation firm that specializes in the recovery of unclaimed property, entered into a memorandum of understanding (MOU) with defendant Kenneth Rosenfeld.  The MOU contemplated that Vanacore would locate and recover shares of stock belonging to Rosenfeld in exchange for a fee.  After signing the agreement, Rosenfeld found and recovered the shares himself and refused to pay Vanacore's fee.  Vanacore sued for breach of contract, fraud, and unjust enrichment.  Rosenfeld demurred on the ground that the MOU violates the Unclaimed Property Law, which precludes

1

certain asset recovery agreements. The trial court sustained the demurrer without leave to amend, finding the MOU illegal and unenforceable. We affirm.

## I.  BACKGROUND

Because this appeal is from an order sustaining a demurrer, we take the facts from the complaint, the allegations of which are deemed true for the limited purpose of determining whether Vanacore has stated a viable cause of action. (See *Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 885.) We also consider matters that are properly the subject of judicial notice. (*Serrano v. Priest* (1971) 5 Cal.3d 584, 591.)

Vanacore "locates lost assets and the reputed owners thereof and then contacts the reputed owners notifying them of assets that were reported as unclaimed, lost, or otherwise." On April 5, 2011, Vanacore personnel saw a notice on the State Controller's website entitled, "Notice of Property Being Held by Business" (SCO notice). A copy of the SCO notice is attached as Exhibit A to Vanacore's complaint.

The SCO notice reads, in part: "As the administrator of the State's Unclaimed Property Program, this notice is intended to reunite you with your property **before** it is sent to the State. The business named below has notified our office that it has property that appears to belong to you and has been unsuccessful in contacting you. . . . [¶] To claim your property, you must contact the business listed below and present proof that you are the owner of the property. Otherwise, the business is required to send your property to the State Controller's Office, Unclaimed Property Division. We urge you to contact the business to claim your property. **To stop your property from being sent to the State, you must contact the business. <u>The State Controller's Office does not have your property at this time</u>**."

The SCO notice goes on to say, "If you do not contact the business by *5/31/2011*[], the business is required by state law to send it to the State Controller's Office for safekeeping." The SCO notice explains that the owner of the property may file a claim for the property with the Controller, however, the Controller is required to sell securities after a specified time. The SCO notice reiterates, **"Again, to stop your**

2

**property from being sent to the State, you must contact the business below. The State Controller's Office does not have your property at this time**."

The SCO notice identifies the "business" as Penson Financial Services Inc. (Penson), and the property held by Penson as 394 shares of Apple stock. The SCO notice identifies Rosenfeld as the owner of the Apple stock and provides Rosenfeld's last known address. The SCO notice also recites two dates: "Date Reported: 11/12/2010" and "Date of Last Contact: 5/31/2007."

Vanacore located Rosenfeld and contacted him. Vanacore explained that it had located assets that appeared to belong to Rosenfeld. Vanacore also explained that the assets would be turned over to the Controller unless claimed. Rosenfeld responded that he wanted to retain Vanacore to recover the assets for him.

The parties entered into the MOU on April 5, 2011. Under the MOU, Vanacore agreed to notify Rosenfeld in writing of the name of the business holding the unclaimed property, and Rosenfeld agreed to pay Vanacore a 10% finder's fee. The MOU does not disclose the nature or value of the property, or the name and address of the entity in possession of the property.

Vanacore identified Penson as the holder of the Apple stock in a facsimile to Rosenfeld dated April 5, 2011. Armed with the name of the holder, Rosenfeld then contacted Penson directly, reclaimed the Apple stock, and refused to pay Vanacore. Vanacore commenced the present action against Rosenfeld on March 27, 2013. Vanacore's complaint asserts causes of action for breach of contract, fraud, and unjust enrichment. The complaint attaches copies of the SCO notice and MOU as exhibits.

Rosenfeld demurred to Vanacore's complaint on June 20, 2013. Rosenfeld argued, inter alia, that the MOU violates Code of Civil Procedure section 1582,[1] which invalidates certain agreements to locate, deliver or recover property. Specifically, section

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

3

1582 invalidates agreements "entered into between the date a report is filed under subdivision (d) of Section 1530 and the date of publication of notice under Section 1531." Under section 1582, an agreement made after publication of notice is valid "if the fee or compensation agreed upon is not in excess of 10 percent of the recoverable property and the agreement is in writing and signed by the owner after disclosure in the agreement of the nature and value of the property and the name and address of the person or entity in possession of the property." Vanacore opposed the demurrer, arguing that section 1582 does not apply because the Apple stock had not been delivered to the Controller, and therefore, Vanacore claimed, had not escheated at the time the parties entered the MOU.

Rosenfeld's demurrer was heard on November 8, 2013. On November 21, 2013, the trial court issued a nine-page order sustaining the demurrer without leave to amend. In the order, the trial court reviewed the applicable provisions of the Unclaimed Property Law, noting that "[Vanacore] confuses the concept of escheat with the requirement of delivery of the property to the [SCO] after the property is reported to have escheated under the applicable provisions of the Unclaimed Property Law."

The trial court explained, "The complaint alleges the MOU was signed by [Rosenfeld] on or about April 5, 2011. While Exhibit A indicates that the subject property was reported to the State Controller as escheated property on November 12, 2010, there are no allegations in the complaint concerning the date of the publication of the notice mandated by Section 1531. [¶] In addition, the agreement/MOU attached to the complaint . . . does not disclose in the agreement the nature and value of the property and the name and address of the person or entity in possession of the property. This violates the statutory requirement that such information be disclosed in the written agreement." Accordingly, the trial court concluded, "The complaint fails to allege sufficient facts to establish a valid contract was entered into."

Turning to the question of whether leave to amend should be granted, the trial court explained, "The defect concerning whether or not the agreement was executed after

4

the date of publication of notice by the State Controller's Office does not appear reasonably capable of being remedied by amendment in light of the allegations of the complaint and Exhibit A. Plaintiff admits that the notice of property being held by business (Exhibit A) stated that if the property was not claimed before May 31, 2011, then [Penson] would be required by law to turn the asset over to the State Controller. [Citation.] The State Controller's statutory duty to publish notice does not arise until after the property is delivered. (Code of Civil Procedure, § 1531(a).) Therefore, plaintiff has expressly admitted in the complaint that the Section 1531 publication could not have taken place and has not offered the court any explanation as to what facts could be alleged to remedy the defect that the agreement was entered into prior to the publication of notice to owners of unclaimed property by the State Controller."

"Furthermore," the trial court continued, "the defect of failure to state in the agreement the nature and value of the property and the name and address of the person or entity in possession of the property does not appear to be reasonably capable of remedy by amendment." Accordingly, the trial court sustained the demurrer to the breach of contract cause of action without leave to amend.

The trial court then considered Vanacore's fraud cause of action. The trial court observed that, "the underlying premise of the fraud cause of action is to recover damages for an intent not to perform an agreement where [Vanacore] admittedly refused to identify the holder of the funds until [Rosenfeld] signed and returned to [Vanacore] the MOU/agreement, which as stated earlier in this ruling rendered the agreement invalid and unlawful. (See Code of Civil Procedure, § 1582 and Civil Code, § 1167.) Under the allegations of the complaint, it was [Vanacore] who had a duty mandated by statute to disclose that information in the agreement." Relying on the rule that "a contract against public policy . . . may not be made the foundation of any action, either in law or in equity" (*Hooper v. Barranti* (1947) 81 Cal.App.2d 570, 574), the trial court concluded that Vanacore failed to state a cause of action for fraud and there was no reasonable possibility the defect could be cured by amendment.

5

The trial court then considered Vanacore's claim for unjust enrichment. The trial court observed that Vanacore's claim for unjust enrichment, like the rest of the complaint, "is solely based upon an invalid, illegal agreement." The trial court recognized that illegal contracts may be enforced in "compelling cases" in order to "avoid unjust enrichment and a disproportionately harsh penalty upon the plaintiff." (*Corrie v. Soloway* (2013) 216 Cal.App.4th 436, 450.) Nevertheless, the trial court observed, "There are no allegations of compelling circumstances where a disproportionately harsh penalty would be imposed upon [Vanacore]." Rather, the trial court continued, "The allegations of fact in the complaint merely set forth the normal circumstances that arise when an agreement to recover unclaimed property is invalid due to the failure to comply with the requirements of Section 1582." Furthermore, the trial court concluded, "The Legislature must have clearly foreseen exactly such a result when declaring agreements that do not meet the requirements of Section 1582 are invalid." Accordingly, the trial court sustained the demurrer to the claim for unjust enrichment without leave to amend.

The trial court entered a judgment of dismissal on March 5, 2014. Vanacore filed a timely notice of appeal.

## II. DISCUSSION

### A. *Standard of Review*

"It is well established that a demurrer tests the legal sufficiency of the complaint. [Citations.] On appeal from a dismissal entered after an order sustaining a demurrer, we review the order de novo, exercising our independent judgment about whether the [complaint] states a cause of action as a matter of law. [Citations.] We give the [complaint] a reasonable interpretation, reading it as a whole and viewing its parts in context. [Citations.] We deem to be true all material facts that were properly pled. [Citation.] We must also accept as true those facts that may be implied or inferred from those expressly alleged. [Citation.] We may also consider matters that may be judicially noticed, but do not accept contentions, deductions or conclusions of fact or law.

6

[Citation.]" (*City of Morgan Hill v. Bay Area Air Quality Management Dist.* (2004) 118 Cal.App.4th 861, 869-870; see also *Blank v. Kirwan* (1985) 39 Cal.3d 311, 318; *Bock v. Hansen* (2014) 225 Cal.App.4th 215, 226.) "If the allegations in the complaint conflict with the exhibits, we rely on and accept as true the contents of the exhibits." (*SC Manufactured Homes, Inc. v. Liebert* (2008) 162 Cal.App.4th 68, 83; accord, *Holland v. Morse Diesel Internat., Inc.* (2001) 86 Cal.App.4th 1443, 1447 ["If facts appearing in the exhibits contradict those alleged, the facts in the exhibits take precedence"].)

B.      *Overview of the Unclaimed Property Law*

"The UPL governs the state's handling and disposition, generally through the controller, of property such as bank accounts and securities, held by entities such as banks, brokerage firms, and insurance companies, the owners of which have not acknowledged or claimed their interest in for several years, generally three.  Such property by statute escheats, nonpermanently, and the holder must transfer it to the controller." (*Morris v. Chiang* (2008) 163 Cal.App.4th 753, 755-756.)  " 'The UPL is not a permanent or "true" escheat statute.  Instead, it gives the state custody and use of unclaimed property until such time as the owner claims it.  Its dual objectives are "to protect unknown owners by locating them and restoring their property to them and to give the state rather than the holders of unclaimed property the benefit of the use of it, most of which experience shows will never be claimed." ' [Citations.]" (*Azure Ltd. v. I-Flow Corp.* (2009) 46 Cal.4th 1323, 1328 (*Azure*).)

The present case involves shares of stock, which are governed by section 1516. (*Azure, supra,* 46 Cal.4th at p. 1328.)  Under section 1516, "Stock will escheat to the state if (1) its owner has neither claimed a dividend nor corresponded in writing or otherwise indicated an interest in the stock for over three years, and (2) the corporation does not know the owner's location at the end of the three-year period. (§ 1516, subd. (b).)  With respect to this stock, the statute provides that the corporation 'shall be deemed the holder.' (*Ibid.*)" (*Azure, supra,* at p. 1328.)

7

Under section 1516, the holder "must make reasonable efforts to notify the stock's owner of the impending escheat. (§ 1516, subd. (d).) The [holder] must give this notice between six and 12 months before the stock becomes reportable to the Controller. (*Ibid.*)" (*Azure, supra,* 46 Cal.4th at p. 1329.)

If the owner does not respond to the holder's notice, the property is deemed unclaimed, and the holder must report to the Controller "the name, if known, and last known address, if any, of each person appearing from the records of the holder to be the owner of any property of value of at least fifty dollars ($50) escheated under this chapter." (§ 1530, subd. (b)(1).)

After the holder reports the unclaimed property to the Controller, but before the property is transferred, "the Controller shall mail a notice to each person having an address listed in the report who appears to be entitled to property of fifty dollars ($50) or more escheated under this chapter." (§ 1531, subd. (d).) The Controller's notice must state that property is being held, provide the name and the address of the person who may be entitled to it, and give the name and address of the holder. (§ 1531, subd. (e).)

If the owner does not respond to the notice, the property is transferred to the Controller. (§ 1532, subds. (a)-(b).) Under section 1532, subdivision (a), "Every person filing a report as provided by Section 1530 shall, no sooner than seven months and no later than seven months and 15 days after the final date for filing the report, pay or deliver to the Controller all escheated property specified in the report." If the owner claims the stock during the approximately seven month period, the holder does not deliver the property to the Controller, but instead files a different report. (§ 1532, subd. (b); *Azure, supra,* 46 Cal.4th at p. 1329.)

"The Controller assumes custody of escheated property it has received and, if it has commercial value, eventually sells it. (§§ 1560, subd. (a), 1563.) 'Securities listed on an established stock exchange shall be sold at the prevailing prices on that exchange.' (§ 1563, subd. (b).) A person who claims an interest in the property 'may file a claim to the property or to the next proceeds from its sale.' (§1540, subd. (a).) 'If the Controller

8

grants the claim, the Controller returns the property or the proceeds from its sale to the claimant . . . .' [Citation.]" (*Azure, supra,* 46 Cal.4th at p. 1330.)

Within one year of after payment or delivery of escheated property, "the Controller shall cause a notice to be published, in a newspaper of general circulation which the Controller determines is most likely to give notice to the apparent owner of the property." (§ 1531, subd. (a).) The purpose of the notice is "to inform owners about the possible existence of unclaimed property identified pursuant to this chapter." (§ 1531, subd. (f).)

C.    *Section 1582*

Section 1582 precludes asset recovery agreements during the window of time between the filing of a holder's report under section 1530 and when the Controller publishes notice that the state has received delivery of unclaimed property under section 1531: "No agreement to locate, deliver, recover, or assist in the recovery of property reported under Section 1530, entered into between the date a report is filed under subdivision (d) of Section 1530 and the date of publication of notice under Section 1531 is valid. Such an agreement made after publication of notice is valid if the fee or compensation agreed upon is not in excess of 10 percent of the recoverable property and the agreement is in writing and signed by the owner after disclosure in the agreement of the nature and value of the property and the name and address of the person or entity in possession of the property." (§ 1582.) The trial court correctly determined that section 1582 invalidates the MOU.

As noted, the complaint attaches the SCO notice, which states, "Date Reported: 11/12/2010." The trial court interpreted the SCO notice to mean that Penson reported the Apple stock as unclaimed pursuant to section 1530 on November 12, 2010. The trial court's interpretation of the SCO notice was reasonable. The SCO notice indicates the report was filed some three years after the last contact with Rosenfeld, an interval that coincides with the three year period in which stock escheats. (§ 1516.) The SCO notice also indicates the report was filed on November 12, 2010, a date that roughly coincides

with the November 1 deadline for filing section 1530 reports.**2** (§ 1530, subd. (d).) Thus, the SCO notice sets forth a chronology that strongly suggests that Penson filed a section 1530 report on November 12, 2010, thereby triggering section 1582.

The complaint does not specify whether the Controller published notice pursuant to section 1531, subdivision (a). Nevertheless, the trial court reasonably inferred that the Controller would not have published the section 1531 notice until *after* the parties entered into the MOU on April 5, 2011.**3** The SCO notice clearly states that the shares of Apple stock were in Penson's custody, and would not be delivered to the Controller until after May 31, 2011. The Controller's statutory duty to publish notice pursuant to section 1531 does not arise until after the property is delivered. (§ 1531, subd. (a).) Thus, the SCO notice, which is incorporated into the complaint, confirms that the section 1531 notice could not have been published at the time the parties entered into the MOU. We therefore conclude that the MOU was "entered into between the date a report is filed under subdivision (d) of Section 1530 and the date of publication of notice under Section 1531." (§ 1582.) Furthermore, even assuming the MOU was entered after the publication of the section 1531 notice, the MOU fails to disclose "the nature and value of the property and the name and address of the person or entity in possession of the

---

**2** We acknowledge that Penson's section 1530 report appears to have been filed 12 days late.

**3** In the order, the trial court opined, "Exhibit A, the notice posted on the web site, merely effectuates the intent of Section 1531 to inform owners about the possible existence of unclaimed property identified as escheated to the State pursuant to the [UPL] [citation], and provides such information to allow recovery of the property prior to the escheated property being delivered to the State. [Citations.]" Vanacore takes the trial court to task for suggesting that the SCO notice was published pursuant to section 1531. However, the trial court did not say that the SCO notice was published pursuant to section 1531. The trial court merely stated that the SCO notice "effectuates the intent of section 1531." Section 1531 "is intended to inform owners about the possible existence of unclaimed property identified pursuant to this chapter." (§ 1531, subd. (f).) We perceive no error in the trial court's observation that the SCO notice was intended to inform owners about the possible existence of unclaimed property.

10

property." (§ 1582.) We therefore conclude, on the face of Vanacore's complaint, that the MOU is invalid under section 1582.

Vanacore attempts to avoid this conclusion in two ways. First, Vanacore argues that the delivery of unclaimed property to the Controller is a "mandatory condition precedent to the application of section 1582" and the limitations that statute places on asset recovery agreements. Second, Vanacore claims that the SCO notice was published pursuant to section 1531.5 of the Unclaimed Property Law, prior to delivery, escheat and the filing of the section 1530 report. We address these contentions in turn.

1. *Section 1582 Focuses on the Filing of the Section 1530 Report, Not the Delivery of the Property*

The Legislature amended the Unclaimed Property Law in 2007. (Stats. 2007, ch. 179, § 1, eff. Aug. 24, 2007.) Among other things, the Legislature modified section 1532, which sets forth the procedure for delivering unclaimed property to the Controller. (Stats. 2007, ch. 179, § 4.) Prior to amendment, former section 1532 required holders to "pay or deliver to the Controller all escheated property specified in the [section 1530] report at the same time the report is filed." (Former § 1532, subd. (a).) Section 1532, subdivision (a) now requires the holder to deliver the property to the Controller "no sooner than seven months and no later than seven months and 15 days after the final date for filing the [section 1530] report." (§ 1532, subd. (a).) Thus, the Unclaimed Property Law now contemplates that holders will retain the property for approximately seven months after the section 1530 report is filed.

Relying on the above-described amendment, Vanacore argues: "There is no restriction on asset recovery agreements during this pre-delivery period, because the property is still in the hands of private parties and not in the custody of the Controller." We are not persuaded.

Although the Legislature introduced a seven month interval between the filing of the section 1530 report and the delivery of the property to the Controller, and made extensive changes elsewhere, section 1582 was not changed. Had the Legislature

11

intended to create a seven-month window for asset recovery agreements, as Vanacore suggests, it would have amended section 1582 to specifically state that the prescribed period begins on the date of delivery. Having made no such changes to section 1582, we must assume that the Legislature intended for the statute to continue to be triggered by the filing of the section 1530 report, despite the fact that the holder does not deliver the property to the Controller for approximately seven months. (See *Rosenthal v. Cory* (1977) 69 Cal.App.3d 950, 953 ["The Legislature is presumed to know the existing law and have in mind its previous enactments when legislating on a particular subject"].) We therefore reject Vanacore's contention that section 1582 does not apply to agreements entered prior to delivery of the property.

We likewise reject Vanacore's suggestion that the Legislature cannot regulate asset recovery agreements prior to the time unclaimed property is delivered to the Controller. We need not consider Vanacore's implied challenge to the Legislature's power to regulate asset recovery agreements prior to delivery, as Vanacore fails to support the argument with reasoned analysis and authority. (*Dabney v. Dabney* (2002) 104 Cal.App.4th 379, 384 ["We need not consider an argument for which no authority is furnished"]; *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785 [failure to support contention with reasoned argument and citations to authority results in waiver].)

We further observe that the Court of Appeal for the First District, Division 1, rejected a similar challenge to section 1582 in *Goodman v. Cory* (1983) 142 Cal.App.3d 737, 742 (*Goodman*). In *Goodman*, a licensed private investigator challenged section 1582 on constitutional grounds, arguing, inter alia, that the statute infringed upon his right to pursue a lawful business. (*Goodman, supra,* at p. 741.) The court of appeal rejected the investigator's constitutional challenge, stating: "While the state cannot suppress or prohibit legitimate business relationships [citation,] there is no fundamental vested right to conduct business entirely free of reasonable governmental rules and regulations. [Citations.] The state in the exercise of its police power has the recognized authority to enact laws to promote the public health, safety, morals and general welfare.

12

[Citation.] . . . [¶] . . . We recognize that section 1582 imposes certain restrictions upon appellant's right to engage in the business of private probate searches. But the statute on its face neither precludes appellant from pursuing his occupation nor imposes unreasonable limitations [on] the performance of his business activities. As appellant concedes, the statute was enacted to protect the public from overcharging for recovery of unclaimed property by unscrupulous probate searchers. Thus, we conclude that the statute furthers a legitimate goal by rational means." (*Goodman, supra,* at pp. 741-742, footnote omitted.) Applying the reasoning set forth in *Goodman*, we would reject Vanacore's implied challenge to section 1582, assuming the issue was properly before us, which it is not.

### 2. *Vanacore Misinterprets Section 1531.5*

Next, Vanacore contends that the SCO notice was published pursuant to section 1531.5, which was promulgated in 2007 and requires the Controller to implement a notification program for owners of unclaimed property. (§ 1531.5, subd. (a), added by Stats. 2007, ch. 179, § 3, eff. Aug. 24, 2007.) According to Vanacore, the "newly created notification program" requires the Controller to give notice before the property escheats and before the holder files the section 1530 report. Taking the argument a step further, Vanacore also suggests that the SCO notice predates the section 1530 report. We perceive several problems with Vanacore's argument.

At the outset, we reject Vanacore's contention that the SCO notice was published prior to escheat. We reiterate that shares of stock escheat to the state if (1) the owner has neither claimed a dividend nor corresponded in writing or otherwise indicated an interest in the stock for over three years, and (2) the corporation does not know the owner's location at the end of the three-year period. (§ 1516, subd. (b).) The holder's duty to file a section 1530 report does not arise until after the unclaimed property escheats. (§ 1530, subd. (a) ["Every person holding funds or other property escheated to this state under this chapter shall report to the Controller as provided in this section"].)

13

Here, the SCO notice indicates that unclaimed shares of stock were "reported" on November 12, 2010, three years after the last contact with Rosenfeld. Again, as a matter of law, shares of stock are typically deemed to have escheated after contact is lost with the owner for three years. (§1516.) As discussed, the trial court reasonably interpreted the SCO notice to mean that Penson reported the shares as unclaimed pursuant to section 1530 on November 12, 2010. Because the holder's duty to file a section 1530 report does not arise until after unclaimed property escheats, and because, as the trial court reasonably concluded, the SCO notice refers to the filing of the report, the SCO notice in this case could not have been provided "pre-escheat." More importantly, the SCO notice at issue here could not have been provided prior to the filing of the section 1530 report.

We also reject Vanacore's contention that shares of stock do not escheat until they are delivered to the Controller. Vanacore's argument is inconsistent with the statutory scheme, which contemplates that (1) shares escheat by operation of law after three years (§ 1516, subd. (b)), (2) the holder reports the escheated shares to the Controller pursuant to section 1530 (§ 1530, subd. (a)), and (3) the holder delivers the shares to the Controller approximately seven months later (§ 1532, subd. (a)). Moreover, and more to the point, Vanacore's argument ignores the plain meaning of section 1582. As previously discussed, section 1582 focuses on the filing of the section 1530 report, not the delivery of unclaimed property to the Controller. The trial court reasonably determined—and Vanacore does not deny—that Penson filed the section 1530 report on November 12, 2010, before the parties entered into the MOU and before the publication of notice pursuant to section 1531. Thus, the MOU was "entered into between the date a report is filed under subdivision (d) of Section 1530 and the date of publication of notice under Section 1531." (§ 1582.) Under section 1582, the MOU was invalid, regardless of the fact that the Apple shares had not been delivered to Controller.

The trial court concluded that section 1582 operates as a complete defense to Vanacore's complaint. Although Vanacore challenges the trial court's conclusion that section 1582 applies, Vanacore does not challenge the further conclusion that section

14

1582 operates as a complete defense. Accordingly, having independently concluded that section 1582 applies, we further conclude that section 1582 bars Vanacore's complaint.

###### D. First Amendment

Vanacore contends the trial court's interpretation of section 1582 "creates direct encumbrances on commercial free speech in the form of solicitations by [Vanacore] that cannot withstand constitutional scrutiny under the framework established in *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm. of N.Y.* (1980) 447 U.S. 557 [(*Central Hudson*)] and *Zauderer v. Office of Disciplinary Counsel of Sup. Ct. of Ohio* (1985) 471 U.S. 626 [(*Zauderer*)]." Vanacore offers no explanation as to how the trial court's interpretation of section 1582 encumbers commercial speech. Consequently, Vanacore's First Amendment challenge to section 1582 has been waived. (*Moulton Niguel Water Dist. v. Colombo* (2003) 111 Cal.App.4th 1210, 1215 ["Contentions are waived when a party fails to support them with reasoned argument"].)

Furthermore, we perceive nothing in the trial court's interpretation of section 1582 that restricts or penalizes speech. Though section 1582 invalidates certain asset recovery agreements, the statute does not target speech. Even assuming that section 1582 has an incidental effect on speech, the First Amendment does not protect commercial speech that proposes an illegal transaction. (See *Central Hudson, supra,* 447 U.S. at pp. 563-564 ["The government may ban . . . commercial speech related to illegal activity"]; *Zauderer, supra,* 471 U.S. at p. 638 ["The States and the Federal Government are free to prevent the dissemination of commercial speech that . . . proposes an illegal transaction"]; see also *Fla. Bar v. Went For It, Inc.* (1995) 515 U.S. 618, 623-24 ["Under *Central Hudson*, the government may freely regulate commercial speech that concerns unlawful activity"].)

Here, the complaint describes only one instance of commercial speech: Vanacore's invitation to enter into the MOU. As previously discussed, the MOU violates section 1582, and is therefore invalid. It follows that Vanacore's invitation to enter into the MOU constitutes an invitation to enter into an illegal transaction, which is not entitled to First Amendment protection. (*Pittsburgh Press Co. v. Pittsburgh Com. on Human*

15

*Relations* (1973) 413 U.S. 376, 389 ["Any First Amendment interest which might be served by advertising an ordinary commercial proposal and which might arguably outweigh the governmental interest supporting the regulation is altogether absent when the commercial activity is itself illegal and the restriction on advertising is incidental to a valid limitation on economic activity"].) Therefore, even assuming that Vanacore's First Amendment challenge to section 1582 was properly before us, we would reject it.

E.     *State and Federal Securities Laws*

Next, Vanacore contends the trial court's "interpretation of the UPL . . . interferes with the state and federal laws that regulate securities, because it proposes to regulate the relationship of shareholders and their stock 'pre-escheat.' " As previously discussed, Rosenfeld's Apple shares escheated by operation of law before the parties entered into the MOU, thereby negating Vanacore's premise that section 1582 regulates securities "pre-escheat." We therefore reject Vanacore's contention that the trial court's interpretation of the Unclaimed Property Law impermissibly regulates securities "pre-escheat," or otherwise interferes with the operation of state or federal securities laws.

F.     *Leave to Amend*

Finally, Vanacore contends "the complaint in question could have been amended." Vanacore bears the burden of showing the defects in its complaint are capable of being cured by amendment. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081; *Arce v. Children's Hospital Los Angeles* (2012) 211 Cal.App.4th 1455, 1497, fn. 19.) " 'To satisfy that burden on appeal, a plaintiff "must show in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading." [Citation.] The assertion of an abstract right to amend does not satisfy this burden.' [Citation.] The plaintiff must clearly and specifically state 'the legal basis for amendment, i.e., the elements of the cause of action,' as well as the 'factual allegations that sufficiently state all required elements of that cause of action.' [Citation.]" (*Maxton v. Western States Metals* (2012) 203 Cal.App.4th 81, 95.)

16

Vanacore's proposed amendment to the complaint is premised upon the allegation that "Penson was merely the clearing house or transfer agent for the stock." According to Vanacore, "[i]t is highly unusual for the owner of stock to contact the clearing house as the owner's contact point is his or her broker." Therefore, Vanacore concludes, "the Apple stock likely was not subject to escheat as the date of last contact listed in the [SCO notice] (May 31, 2007) was inaccurate."

Vanacore has failed to show how the complaint might be amended to state a cause of action. The allegation that Penson was a clearing house or transfer agent does not, without more, establish that the "Date of Last Contact" in the SCO notice was inaccurate. Vanacore merely speculates that the "Date of Last Contact" was supplied by Penson (as opposed to Rosenfeld's broker) and further speculates that the date was incorrect. Mere speculative allegations are not enough to carry Vanacore's burden of showing how the complaint could be amended, particularly when Vanacore's new allegations contradict the exhibits to Vanacore's complaint. (See *Shuster v. BAC Home Loans Servicing, LP* (2012) 211 Cal.App.4th 505, 513 [rejecting speculative allegations about note's forgery where the plaintiffs were "unable to articulate any facts supporting this theory or demonstrating prejudice"].) We therefore conclude that Vanacore has failed to demonstrate how the complaint could be amended to state a cause of action.

## III.  DISPOSITION

The judgment is affirmed.  Respondent Kenneth Rosenfeld shall recover his costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


/S/

_____
RENNER, J.


We concur:


/S/

_____
RAYE, P. J.


/S/

_____
HULL, J.

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| VANACORE AND ASSOCIATES, INC., | C076017 |
| Plaintiff and Appellant, | (Super. Ct. No. PC20130167) |
| v. | ORDER CERTIFYING OPINION FOR PUBLICATION |
| KENNETH ROSENFELD, | |
| Defendant and Respondent. | [NO CHANGE IN JUDGMENT] |

THE COURT:

The opinion in the above-entitled matter filed March 10, 2016, was not certified for publication in the Official Reports. For good cause it appears now that the opinion should be published in the Official Reports and it is so ordered.

BY THE COURT:

/S/

_____

RAYE, P. J.

/S/

_____

HULL, J.

/S/

_____

RENNER, J.

1

EDITORIAL LISTING


APPEAL from a judgment of the Superior Court of El Dorado, Warren C. Stracener, Judge.  Affirmed.

Law Office of Timothy A. Charshaf and Timothy A. Charshaf; The Palmer Law Group and William W. Palmer for Plaintiff and Appellant.


Drescher Law Firm and Robert E. Drescher for Defendant and Respondent.